**The STATE of North Dakota, Plaintiff and Respondent,**

v.

**Russyl GILL, Defendant and Appellant.**

**Cr. No. 345.**

Supreme Court of North Dakota.

Dec. 15, 1967.

Thompson, Lundberg & Nodland, Bismarck, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Albert A. Wolf, Burleigh County State's Atty., Bismarck, for plaintiff and respondent.

KNUDSON, Judge.

The defendant was convicted by a jury of the crime of manslaughter in the first degree and was sentenced to the penitentiary for five years, which sentence was suspended on good behavior. The defendant appeals from the judgment.

The defendant entered a plea of not guilty at the arraignment. After the commencement of the trial and after the jury had been selected and sworn the defendant moved to quash the information. The trial judge denied the motion to quash on the grounds that it was untimely.

The defendant assigns three specifications of error:

1. That the Court erred in failing to grant the Defendant's Motion to Quash.

2. That the Court erred in certain ruling of law, allowing evidence to be introduced over objections of Defendant that prevented a fair and impartial trial of the matter.

3. That the verdict of the jury is not supported by the evidence and is contrary to law.

We will consider first the defendant's specification "that the court erred in failing to grant the defendant's motion to quash." The defendant admits that he made the motion to quash after he had entered his plea of not guilty. North Dakota Century Code

§ 29–14–12 provides that a motion to quash shall be made before the plea, and if not so made the defendant shall be taken to have waived all objections which are grounds for a motion to quash "except those which are grounds for a motion in arrest of judgment." He argues that the grounds upon which his motion is founded are the same as for a motion in arrest of judgment, and come within the exception to N.D.C.C. § 29–14–12, "except those which also are grounds for a motion in arrest of judgment" and, therefore, the motion to quash may be made any time that a motion in arrest of judgment may be made on the grounds listed in § 29–25–02 common to both motions.

■ The defendant seems to be of the opinion that the motion to quash may be made at any time on grounds that are the same for both the motion to quash and the motion in arrest of judgment. However, it is well settled in this State that by the failure to move to quash an information before he pleads thereto a defendant waives all objections to the information, except those which are also grounds for motion in arrest of judgment. State v. Simpson, 78 N.D. 571, 50 N.W.2d 661.

■ After a defendant fails to make a timely motion to quash the indictment or information the grounds, excepted by § 29–14–12, may be taken advantage of only by a timely motion in arrest of judgment. The motion in arrest of judgment must be made in the manner and form and at the time required by North Dakota Century Code Chapter 29–25.

■ The motion in arrest of judgment must be made before or at the time the defendant is called for judgment (§ 29–25–01) and heard and decided before judgment is entered (§ 29–25–04).

■ By failing to make a timely motion to quash the information and by failing to make a timely motion in arrest of judgment the defendant has waived all objection to the information.

■ The defendant having failed to make a timely motion to quash, the court did not err in denying the motion to quash.

■ In the second specification of error the defendant alleges that the trial court erred in allowing certain inadmissible evidence to be introduced over objection that prevented a fair and impartial trial of the matter. The defendant asserts that three witnesses for the State, Allen Kunkel, Byron Montgomery and Judy Radspinner, testified as to the speed of the defendant's automobile, over the defendant's objections on the grounds that the testimony of each was based upon only fleeting observation of the defendant's car and upon engine sound.

Kunkel, age 24, testified that he had entered Main Avenue from the south on 26th Street and was traveling west on Main Avenue when he met and passed the Gill car at a point opposite the Pancake House about 200 to 250 feet west of the place of the accident. He had seen the defendant's car approaching from the west and had observed it for the 200 to 300 feet from the intersection. He was asked if he could make an estimate of the speed of the defendant's car. He replied, "It was a high rate of speed by engine sound. That is all I can say." The defendant objected to the answer on the grounds that the estimate of speed was based on engine sound. The court overruled the objection. Kunkel was then asked if he could arrive at a low and high estimate of speed that the defendant's car was traveling as he observed it. To this question he replied that he could. He was then asked, "Would you tell us your estimate of the speed?" The defendant objected to the witness' estimate because it would be "all or partially based upon engine sound alone; it is an improper way of judging the speed of a vehicle." The court overruled the objection. The witness then testified that the defendant was "doing be-

tween 40 and 50." Kunkel further testified that it was the sound of the engine that first called his attention to the defendant's car before he met and passed it, that the speed of the defendant's car was increasing before and after it had passed him, and that he watched it through the rearview mirror up to the accident. "I just thought he was going at a high rate of speed and I looked in the rearview mirror and saw they were still going down the street, and then I saw the Sims boy come onto the street and he was partway into the street and the Black Comet, or whatever it was, did make a slight move, if I remember right—in which direction I can't remember because the rearview mirror, I guess, has a distortion of direction." On cross-examination, in answer to the question, "The sound of this Gill car played an important part in your estimation of the speed, did it not?" he replied, "Yes, very much so."

Judy Radspinner, a student at Bismarck Junior College, was a passenger in an automobile driven by Byron Montgomery. They were about to leave the parking lot of the Pancake House and had stopped at the easterly driveway before entering Main Avenue. This driveway is about 30 feet wide and 90 feet from the west line of 26th Street and about 130 feet to the center line of 26th Street. She testified that just as they were "pulling out into the street a dark-blue-black car speeded right in front of us and at the intersection of Main and 26th Street it hit the car driven by Patrick Sims." She said the defendant's car was right in front of her when she first saw it. There were other cars parked along the curb so she could not see it coming. She was asked if there was anything that called her attention to it before she saw it, and she replied that she could hear it coming, that it sounded as though someone was stepping on the gas pedal real hard. The defendant's objection to this latter statement as not responsive was overruled by the court. She described the noise "like the roar of an engine, a car engine." A few seconds later she saw the car in front of her and continued to look at it from there until it hit the Sims car. She said she had driven a car about two and one-half years, that she had observed the speedometer of her automobile to check the speed she was traveling, and that she had observed other people driving to determine what their speed was. In reply to the question, "Now, based upon your observation of this car from the time it first came into your view until the time of the impact, do you think you have an estimate as to its speed at that time?" she answered, "Yes, sir." And upon being asked, "What is your estimate?" she answered, "Approximately sixty miles an hour."

On cross-examination, concerning the opportunity for observation of the Gill car she was asked, "But your estimation of the speed of the Gill car is based upon your observation from the time it passed directly in front of you up to the point of impact?" She replied, "Approximately, yes." She testified that when she turned her head to the west when she heard the roar of the engine she saw it in front of her. She testified she heard the screech of brakes just before the impact, and that the Gill car swerved to the north just a few seconds before the impact.

On cross-examination she was asked:

Q. Miss Radspinner, are you basing your opinion as to the speed partly on what you saw and partly on the roar of this car?

A. Oh, I wouldn't say on the roar of the car. I really don't know how a roar would sound going much faster than 70. I know it was the roar of a car and it speeded by me very fast and I said "60 to 70 miles an hour."

Q. But part of your estimation is based upon the fact that there was quite a loud roar there?

A. Yes, the roar told me it was going fast.

Q. I see. The roar told you it was going fast?

A. Yes.

Q. The roar impressed you?

A. Yes.

The deposition of Byron Montgomery was read. He was the driver of the car in which Judy Radspinner was a passenger. He testified that he first saw the defendant's car about 20 or 30 feet to his left as they were about to leave the parking lot of the Pancake House. In reply to the query, "What was it that called your attention to it?" he answered, "I heard the engine of the car as it went by, just before it went by." He said he observed the defendant's car from there to the intersection where the accident occurred. He said he had driven a car about four years. He was asked, "Based upon your experience do you have an estimate of the speed of the car that you observed going down Main Street?" The defendant's objection of insufficient foundation was overruled by the court. He then replied, "Yes, between 60 and 70 miles per hour." He said that just before the impact the defendant's car swerved to the left slightly and the brakes went on. "It seemed like he was swerving trying to get out of the way of the Dodge but he couldn't swerve very much because of the speed he was going." On cross-examination he testified the defendant's car slowed down just before the impact. He further testified on cross-examination that his observation of the defendant's car covered a distance from a point 20 to 30 feet to his left to about 130 feet to his right to the place of impact, and that his estimate of speed was based on that observation.

The defendant's objection to the admission of the testimony of these witnesses is directed specifically to the testimony relating to the estimates of speed made by these witnesses that such estimate was based solely on sound and that the witnesses did not have sufficient opportunity to observe the Gill car from the time it came into view until the time of the collision to form an opinion of the speed of the Gill car.

There is no doubt that the noise made by the Gill car was a factor in the estimates of speed made by the witnesses, and, in particular, it called their attention to the Gill car as it proceeded down Main Avenue.

The witnesses testified that not only were they attracted to the Gill car by the noise it made, but also that they watched it as it progressed for distances varying from 130 feet to 300 feet to the place of the accident. They not only heard the Gill car but had an opportunity to observe the Gill car.

■ The witnesses had some substantial opportunity for observation. The degree of opportunity and the extent of observation is not a matter which affects the competency of the witness, but one which goes only to the weight to be given to the testimony by the jury. Knoepfle v. Suko, 108 N.W.2d 456 (N.D.1961).

■ All of the witnesses who testified as to speed had some automobile driving experience for two and a half years or more, and had some knowledge in estimating the speed of automobiles.

The general rule as stated in Blashfield Cyc. of Automobile Law and Practice, Perm. ed., Section 6232 is:

"A person who is of ordinary intelligence, who has some knowledge of the speed generally of the class of vehicles to which the one involved in an accident belongs, and who actually witnessed the speed of the vehicle in question at or near the time of the accident in which it was involved, * * is a competent witness on the issue of a speed. * * * "

Knoepfle v. Suko, supra, 464.

Speed of an automobile is not a matter of exclusive expert knowledge, but any person of ordinary intelligence with

reasonable experience in driving and in noting the speed of automobiles is competent to give testimony thereon.

Knoepfle v. Suko, supra, 458.

Where a witness has some substantial opportunity to observe the speed of a vehicle, the degree of opportunity and the extent of his observation are not matters which affect his competency as a witness but go only to the weight to be accorded to his testimony.

Knoepfle v. Suko, supra, 458.

Jones, Commentaries on Evidence (2d ed.) § 1264, page 2329, discusses the competency of non-expert witnesses to testify to opinion evidence as to speed as follows:

A person of ordinary intelligence, having opportunity for observation, is competent to testify as to the speed at which an automobile was being operated at a given time. The rate of speed of an automobile on a public highway is a matter of which people generally have some knowledge. It is not a matter exclusively of expert knowledge or skill. As stated above, where the rate of speed of such a vehicle is material in an action, any person of ordinary ability and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving. The extent of his observation goes to the weight of his testimony.

"It requires no special technical training to qualify an intelligent person to testify as to the rate of speed of a moving vehicle. Such a person must have seen vehicles in motion all his life, trains, wagons, buggies, horses, men, automobiles. Involuntarily, without any conscious effort on his part, he has been estimating the rate of speed of such vehicles all his life."

The defendant objected to the foundation to the testimony of Montgomery in that no basis was made for comparison of speed. Montgomery testified that he had driven for four years.

The defendant argues that Montgomery was allowed to testify as to speed, over objection, and without any foundation for his opinion other than brief observation and that he did drive an automobile. The defendant contends that such testimony must be based upon sufficient observation and qualification that he was by personal experience familiar with the operation and speed of motor vehicles, whether his knowledge had been gained through the personal operation of motor vehicles, or through experience in estimating the speed of motor vehicles operated by others.

But in State v. Auerbach, 108 Ohio St. 96, 140 N.E. 507 (1923), cited in the annotation in 70 A.L.R. 540, 543, the court, in holding that an actual observer of a moving automobile was qualified to testify as to its speed, said:

"The general practice is that the witness who expresses an opinion touching such matter as is the subject of expert knowledge should first show his qualifications to express such an opinion. But when his opinion is based upon the ordinary observations of mankind in the everyday affairs of life, where no great amount of technical training is necessary, while it is better practice for the witness to state his previous experience and qualifications, yet it is not always essential to do so. It rests within the sound discretion of the court whether the witness may express an opinion or not. When the opinion is based upon personal observation of a subject upon which any ordinarily intelligent person may have expert knowledge and experience, qualification is not necessarily a prerequisite to stating the results of that observation and giving an opinion thereon."

The question is not the admissibility of the testimony, but rather the weight to be given to it. The witness testified that he had driven a car for approximately four

years, that he had observed defendant's vehicle as it approached the accident scene, and that he could estimate the speed of the vehicle. His answer purported to give this estimate. The evidence was admissible; its weight and worth were for the jury. Knoepfle v. Suko, supra.

The last objection of the defendant was to the admission into evidence of a photograph of defendant's car after the accident. He argues that the admission of the photograph for the purpose of proving the speed of the car at the time of the accident was error.

The admission of photographs is largely within the discretion of the trial court. Froemke v. Hauff, 147 N.W.2d 390 (N.D.1966); Teegarden v. Dahl, 138 N.W.2d 668 (N.D.1965); Schnell v. Northern Pac. Ry. Co., 71 N.D. 369, 1 N.W.2d 56 (1941); Wyldes v. Patterson, 31 N.D. 282, 153 N.W. 630 (1915); 29 Am.Jur.2d, Evidence, § 785, p. 859.

The photographs were introduced as a visual representation of the condition and position of the defendant's car after the accident and also as having some probative value as to the speed of the defendant's car at the time of the accident, as an aid to the jury.

In the recent case of Gleson v. Thompson, N.D., 154 N.W.2d 780, where we held that the trial court did not abuse its discretion in admitting certain photographs in evidence, we said that the photographs were of value to the jury in helping them determine the points of impact and speed— points of impact from the location of the damage, and speed from the degree of damage.

The photographs * * * were some proof as to the speed at which Nichols approached the place of collision. In such a situation, we do not believe it can be said that the court abused its discretion; rather, we think the judge was acting clearly within the limits of his discretion.

Drohan v. Standard Oil Co., 168 F.2d 761, 765 (7th Cir. 1948).

The admissibility of photographs as evidence is discussed in Scott, Photographic Evidence, § 711 (1942), where it is said that photographs may also throw light upon the speed:

Often from an inspection of photographs of vehicles involved in an accident a jury can obtain a more correct impression and a better understanding of the situation than in any other way. Therefore, when relevant to the issues in controversy and when verified, photographs of the vehicles involved frequently have been held admissible in personal injury and death actions, suits on accident insurance policies, and in manslaughter cases arising out of the negligent operation of a vehicle. Such photographs frequently are offered and admitted in evidence to show the location in which a vehicle was struck or the violence of a collision. They may also throw light upon the rate of speed the cars were moving at the time of the collision.

We conclude that the trial court did not err in admitting the photograph of the defendant's car into evidence. The photograph was a fair representation of the condition and position of the car, and, together with the other evidence of speed, threw some light upon the speed of the defendant's car. Under the circumstances we believe the trial court did not abuse its discretion.

The last specification of error alleges that the verdict is not supported by the evidence and is contrary to law. We have held that the sufficiency of the evidence to sustain the verdict, not challenged either by motion for new trial or for an advised verdict, cannot be considered on an appeal from the judgment alone. State v. Wilson, 142 N.W.2d 106 (N.D.1966); State v. McClelland, 72 N.D. 665, 10 N.W.2d 798 (1943). In the instant case the defendant did not make a motion

either for a new trial or for an advised verdict, but he did make a motion for a directed verdict on the grounds of the insufficiency of the evidence. Motions for directed verdict are not applicable to criminal proceedings. Under our statutes the court has no authority to direct a verdict in criminal cases. The court may advise the jury to acquit the defendant. "But the jurors are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict." N.D.C.C. § 29–21–37. State v. Seeb, 76 N.D. 473, 37 N.W.2d 341 (1949). However, we have considered the motion made by the defendant as a motion for an advised verdict,

and have reviewed the evidence. From our review of the evidence and from what we have already said in regard to the other specifications of error we find that the evidence is sufficient to support the verdict.

The judgment of conviction is affirmed.

TEIGEN, C. J., and ERICKSTAD and STRUTZ, JJ., concur.

PAULSON, J., not being a member of the Court at the time of submission of this case, did not participate.