STATE of North Dakota, Plaintiff
and Respondent,

v.

Fay HEASLEY, Defendant and Appellant.

STATE of North Dakota, Plaintiff
and Respondent,

v.

Selma HEASLEY, Defendant and Appellant.

Cr. Nos. 401, 402.

Supreme Court of North Dakota.

April 18, 1972.

Rehearing Denied May 9, 1972.

Charles J. Gilje, Carrington, for defendant and appellant.

Charles J. Gilje, Carrington, for defendant and appellant.

Helgi Johanneson, Atty. Gen., Bismarck, and Thomas L. Burgum, State's Atty., Jamestown, for plaintiff and respondent.

A. C. BAKKEN, District Judge.

This is a criminal case. Fay Heasley, Selma Heasley, Adam Bellon, Jake Zimmerman, and Alfred Hannamen are all shown as defendants in the transcript of trial proceedings and the briefs of the appellants and respondents which were filed with this court. However, this appeal is taken by Fay Heasley and Selma Heasley only. Charges of trespass were lodged in the County Court with Increased Jurisdiction in Stutsman County against the five defendants above named. Thereafter, on motion of said defendants, the matter was transferred to the County Court with Increased Jurisdiction in Burleigh County, and on August 17 and 19, 1970, the case was tried to a jury, the Honorable W. J. Austin, Judge, presiding. The jury returned verdicts of guilty of the crime of willful trespass charged against Fay Heasley, Selma Heasley, Adam Bellon and Jake Zimmerman. Judgments of convictions were entered August 24, 1970, against the defendants found guilty. It is from said judgments of convictions that Fay Heasley and Selma Heasley have taken this appeal. The information in each case reads in part as follows:

"That on the 19th day of May, in the year of our Lord, one thousand nine hundred seventy in the County of Stutsman and State of North Dakota, one, Fay Heasley, late of the county of Stutsman and State aforesaid, did commit the crime of Willful Trespass (12–41–14, NDCC), committed in the following manner, to wit:

"That at the said time and place the said Fay Heasley did enter land belonging to or in the possession of Arvel Glinz and Marjorie Glinz with the purpose of injuring the property right of the said Arvel Glinz and Marjorie Glinz by claiming possession of another, to wit: That Fay Heasley did not receive the permission of Arvel Glinz and Marjorie Glinz, the owner and persons in lawful possession of said land, and that Fay Heasley failed to leave said land immediately up-

on being requested by the owner and person in lawful possession of such land to leave such land, said land being described as follows, to wit: The farm home and out buildings located on the southeast quarter (SE ¼) of Section 24, Township 138, Range 66."

The information filed against Selma Heasley is identical with the above except, of course, her name is entered throughout in the place of the name of Fay Heasley.

In order to fully understand this action, we hereby quote verbatim the entire text of Section 12–41–14, North Dakota Century Code:

"Trespasses upon land enumerated—Misdemeanor.—Any person who willfully commits any trespass by either:

"1. Willfully opening, tearing down or otherwise destroying any fence on the enclosed land of another, or opening any gate, bar or fence of another and willfully leaving it open without the permission of the owner, or maliciously tearing down, mutilating, or destroying any sign, signboard, or other notice relative to trespassing;

"2. Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or property rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of such land, his agent or by the person in lawful possession;

"3. Entering cultivated or enclosed lands where signs forbidding trespass are displayed at intervals not less than four to the mile along exterior boundaries;

"4. Entering any privately owned lands described in subsection 3, without the permission of the owner of such land, his agent or of the person in lawful possession and

"a. Refusing or failing to leave such lands immediately upon being requested by the owner of such land, his agent or by the person in lawful possession to leave such land;

"b. Tearing down, mutilating or destroying any signs, signboard, or notice forbidding entry on such lands; or

"c. Removing, injuring, unlocking or tampering with any lock on any gate on or leading into such lands; is guilty of a misdemeanor."

The facts may be summarized as follows:

During the afternoon of May 19, 1970, Stutsman County Sheriff Gerald Gutzwiller received a request by telephone to go to the farm home of the Arvel Glinz family, which was located in Section 24, Township 138, Range 66, Stutsman County, North Dakota. Stutsman County State's Attorney Thomas L. Burgum and James Smorada, a reporter for The Jamestown Sun, a daily newspaper, accompanied Sheriff Gutzwiller to the Glinz farm home. As they drove into the farmyard, Jake Zimmerman and Alfred Hanneman came out of the front door of the Glinz house. Sheriff Gutzwiller informed them that they were trespassing on private property and upon his request they left the premises. Sheriff Gutzwiller next proceeded into the Glinz house and encountered the defendants Fay Heasley and Selma Heasley. He informed them that they were trespassing on private property and requested that they leave the premises.

In the meantime, Jake Zimmerman accompanied by Adam Bellon returned to the Glinz farmyard. Sheriff Gutzwiller went outside of the Glinz house and informed Jake Zimmerman for the second time, and informed Adam Bellon for the first time, that they were trespassing on private property and requested that they leave the premises. Before attempting to go back inside the Glinz house Sheriff Gutzwiller radioed to the Jamestown Police Department and requested that police officers be

dispatched as special deputy sheriffs to assist him at the Glinz farm home. While Sheriff Gutzwiller was outside of the Glinz house the defendants Fay Heasley and Selma Heasley locked the doors of the house from the inside to prevent Sheriff Gutzwiller from entering therein. The Sheriff proceeded to break a glass in the back door to unlock it and reentered the house. He then unlocked the front door and State's Attorney Burgum and Mr. Smorada entered the house. Thereafter, Arvel Glinz and Marjorie Glinz, his wife, arrived on the premises. As they approached their farmyard they saw several "No trespassing" signs posted thereon which bore the signature of the defendant Fay Heasley, and which Fay Heasley admitted posting. Mr. Glinz, upon arriving at his farmyard, saw Adam Bellon annd another man whom he could not identify sitting in a pickup truck which was parked in his farmyard. Arvel Glinz and Marjorie Glinz went inside their farm home and Arvel Glinz asked the defendants Fay Heasley and Selma Heasley to leave his house. An upsetting exchange followed between the Glinzes and Heasleys over claims of ownership of the premises. About this time, Officers Leon Okerland and Gary Peterson of the Jamestown Police Department arrived as special sheriff's deputies, and at that point the defendants Fay Heasley and Selma Heasley, without further resistance, were taken in custody by Sheriff Gutzwiller to Jamestown, North Dakota.

The following specifications are set forth by the appellants here:

(1) That the court erred in its instruction to the jury specifying the law whicn the defendants were charged with having violated and such error was patently prejudicial, a manifest and clear injustice to the defendants, and a denial of essential rights of the defendants.

(2) That the court erred in its instruction to the jury as to that which constituted the material elements of the crime charged in the informations and that such error was patently prejudicial, a manifest and clear injustice to the defendants, and a denial of essential rights of the defendants.

(3) That the court erred in admitting into evidence testimony given by Sheriff Gutzwiller as to his ordering the defendants off the subject property.

(4) That the court erred in admitting into evidence State's Exhibits 1 and 2 without proper foundation.

(5) That the court erred in admitting into evidence State's Exhibits 3 and 4 without proper foundation or showing of relevancy.

(6) That the court erred in admitting into evidence State's Exhibits 5 and 6 without proper foundation or showing of relevancy.

(7) That the court erred in admitting State's Exhibit 8 without foundation and without a showing of relevancy and materiality.

(8) That the court erred in admitting into evidence State's Exhibits 9 and 10 without proper foundation and without a showing of relevancy and materiality.

(9) That the court erred in instructions to the jury in defining and explaining the meaning of "willfully."

(10) That the court erred in refusing to grant defendant's motion in arrest of judgment.

With respect to the first specification above stated, we quote directly from the court's instruction:

"The law which the defendants are charged with having violated, so far as is material, is as follows:

"12-41-14. Trespasses upon land enumerated—Misdemeanor.—Any person who willfully commits any trespass by either:

. . . . . .

"2. Entering any lands, whether unenclosed or enclosed by fence, for the purpose of injuring any property or prop-

erty rights or with the intention of interfering with, obstructing, or injuring any lawful business or occupation carried on by the owner of such land, his agent or by the person in lawful possession;

"4. . . .

"a. Refusing or failing to leave such lands immediately upon being requested by the owner of such land, his agent or by the person in lawful possession to leave such land;

is guilty of a misdemeanor."

Section 12–41–14 set forth above in its entirety decrees acts as specified in subsections 1 and 2 to be trespass each exclusively and independent of any other subsection, while subsections 3 and 4 together decree acts which constitute trespass.

The defendants allege that the court erred by failing to include subsection 3 and the introductory portion of subsection 4 in its instructions to the jury regarding the specific charge against the defendants.

Subsection 3 and the introductory portion of subsection 4 of § 12–41–14, NDCC, reads as follows:

"3. Entering cultivated or enclosed lands where signs forbidding trespass are displayed at intervals not less than four to the mile along exterior boundaries;

"4. Entering any privately owned lands described in subsection 3, without the permission of the owner of such land, his agent or of the person in lawful possession and"

Sections 29–11–10, 29–11–20, 29–11–21, 29–11–22, 29–11–23 and 29–11–24 of the North Dakota Century Code pertaining to language requirements in an information are quoted in full as follows:

"29–11–10. Charging the offense.— The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the defendant is being prosecuted in one or more of the following ways:

"1. By using the name given to the the offense or offenses by a statute or statutes and sufficient particulars to give the court and the defendant notice of the offense or offenses intended to be charged;

"2. By stating so much of the definition of the offense or offenses in terms of the statute or statutes defining the offense or offenses, or in terms of substantially the same meaning, as is sufficient to give the court and the defendant notice of the offense or offenses which are intended to be charged.

"The indictment or information may refer to a section or subsection of any statute or statutes creating the offense or offenses charged therein and, in determining the validity or sufficiency of such indictment or information, regard shall be had to such reference."

"29–11–20. Ownership of property— Allegation not required.—An indictment or information need contain no allegation of ownership of any property, unless such allegation is necessary to charge the offense under section 29–11–10. In charging an offense in which an allegation of ownership of property is satisfied by proof of possession or right of possession, any statement in an indictment, information, or bill of particulars which implies possession or right of possession is a sufficient allegation of ownership."

"29–11–21. Intent not pleaded—Exception.—An indictment or information need contain no allegation of the intent with which an act was done unless such allegation is necessary to charge the offense under section 29–11–10. If it is necessary to allege an intent to defraud and injure, it is sufficient to allege the same generally without alleging an intent to defraud or injure any particular person, unless such allegation is necessary to

charge the offense under section 29–11–10."

"29–11–22. Characterization of act.—An indictment or information need not:

"1. Allege that the offense was committed or the act done 'feloniously' or 'traitorously' or 'unlawfully' or 'with force and arms' or 'with a strong hand';

"2. Use any phrase of like kind otherwise to characterize the offense;

"3. Allege that the offense was committed or the act done 'burglariously,' 'willfully,' 'knowingly,' 'maliciously,' or 'negligently';

"4. Contain the words 'as appears by the record' or any other words of similar import; nor

"5. Otherwise characterize the manner of the commission of the offense unless such characterization is necessary to charge the offense under section 29–11–10."

"29–11–23. Omission of unnecessary matter.—An indictment or information need not state any matter not necessary to be proved."

"29–11–24. Allegations of places and things, manner.—Whenever it is necessary in an indictment or information to describe any place or thing in order to charge an offense under section 29–11–10, it is sufficient to describe such place or thing by any term which in common understanding embraces such place or thing and does not include any place or thing which is not by law the subject of, nor connected with, the offense."

■ An information is sufficient if it gives the name of the offense and sufficient particulars thereof to give the court and the defendant notice of the offense intended to be charged so that the defendant can prepare his defense and plead the result in bar of a subsequent prosecution for the same offense. State v. Tjaden, 69 N.W.2d 272 (N.D.1955).

■ "In considering the sufficiency of a criminal pleading, technicalities have been abolished and it is only necessary to plead an offense in its usually designated name and in plain, ordinary language."

State v. Medearis, 165 N.W.2d 688 (N.D. 1969).

Furthermore, the transcript of the trial shows no objection by defendants' counsel to the inclusion of subsection 4(a) in the court's instructions as to the statute under which the defendants were charged.

■ Where the sufficiency of the language of an information is challenged for the first time. on appeal to the supreme court, the wording will be viewed less strictly than if it had been challenged in the court below. State v. Prince, 75 N.D. 386, 28 N.W.2d 538 (1947).

■ The information set forth above in its entirety shows that the necessary elements of Section 12–41–14, subsection 2, are stated therein. Since this subsection stands by itself independently of other sections or subsections the information was sufficient.

While it was error for the court to include in its instructions subsection 4(a) in defining the crime charged, the evidence in the record does not sustain defendants' contention that the jury's acquittal of Alfred Hanneman establishes that the defendants Fay Heasley and Selma Heasley were erroneously convicted under subsection 4(a) rather than under subsection 2.

We quote the following testimony of Fay Heasley under direct examination by his attorney, Dennis A. Schneider:

"Q. Mr. Heasley, do you believe you own this property?

"A. My family owns it. I am appointed power of attorney to represent them.

"Q. And you have been trying since 1960 or '61 to get it back, haven't you?

"A. Well, my son wiped us all out in 1965, foreclosed tax certificate to the auditor of deeds.

"Q. Now, on this date, the 19th of May, do you remember going out to this farm?

"A. Correct.

. . . . . .

"Q. Was the front door locked?

"A. I believe it was.

"Q. Do you have a key to that door?

"A. Yes, we got keys. It's our home.

"Q. Have the locks been changed since you left there?

"A. Could be. I don't know.

"Q. Was the door open when you went in?

"A. Well, I put up my sign. It's a steel door, and I had pushed on it and it opened, so I walked in, like always.

"Q. Did you believe that you have every right to enter upon the property?

"A. Correct. Entitled as owner, through my wife. She put me back in joint tenancy nineteen, twenty acres of it.

"Q. And you believe you are the owner of the property?

"A. Owner, with Selma Heasley. Joint tenancy.

"Q. Did you believe you have the right to go on this property?

"A. Correct. Absolutely.

"Q. And did you ask these other three individuals—the other three defendants—to go along with you and your wife that day?

"A. Correct. I was frightened. This guy—the son—pulled a gun on me a number of times.

"Q. Do you know if any of them were armed? Did they have weapons?

"A. No, none of them. That's all I asked them to do, to be my witness. I figured—

"Q. Why did you feel it was necessary that you take possession of the property?

"A. Under the tax court order that was filed and closed, and all were in contempt trying to overrule it. There was no referee, and Judge Davies has got the horse ahead of the cart and didn't have the power to appoint the referee until the tax court said how much I owed. The tax court said I owned the land.
. . . ”

Under cross-examination by Stutsman County State's Attorney Thomas L. Burgum, the defendant, Fay Heasley, testified as follows:

"Q. Did you know in May of 1970, the morning of May 19th, that the Glinzes, not you, had possession of the land?

"A. I knowed they are nothing but illegal—

. . . . . .

"Q. Had you and your wife lived there the night of the 18th?

"A. We had title to it.

"Q. I asked you, did you stay there?

"A. Did we? No."

Specifically, Fay Heasley admits that he and his wife, Selma Heasley, willfully entered upon lands held in possession by Arvel Glinz and Marjorie Glinz for the purpose of taking possession thereof for himself and his wife. In addition to entering upon such lands Fay Heasley admitted that he posted signs thereon claiming ownership of the lands with the intention of interfering with or obstructing any lawful occupation being carried on thereon by the Glinzes.

■ This being a jury case, to determine whether the evidence was sufficient to support the verdict we must view the evidence in the light most favorable to the verdict. State v. Moe, 151 N.W.2d 310 (N.D.1967).

■ Considering the testimony of Fay Heasley in that light, we believe that the jury could reasonably have found, and did in fact find, that the defendants Fay Heasley and Selma Heasley intentionally committed acts which constitute trespass under the provisions of subsection 2 of Section 12–41–14.

■ Therefore, assuming that the jury acquitted Alfred Hanneman because he left the lands upon being requested to do so by the sheriff, it does not follow that the inclusion of subsection 4(a) in the trial court's instructions was prejudicial to Fay Heasley and Selma Heasley. Clearly, the error is nonprejudicial. It does not affect substantial rights of these defendants. State v. Moe, *supra;* State v. Dietz, 115 N.W.2d 1 (N.D.1962).

■ With respect to specification No. 2, counsel for defendants alleges that the court's instructions as to what constituted the material elements of the crime charged were incomplete and, therefore, patently prejudicial error.

In view of our conclusion that inclusion of subsection 4(a) in the court's instructions was nonprejudicial error, we find that the defendants' second specification has no merit. It would have been improper for the court to have instructed on matters not pertinent to subsection 2 of Section 12–41–14.

■ Furthermore, the court gave counsel an opportunity to submit requested instructions and to register objections to the court's proposed instructions. The transcript shows neither such submission nor such objection with respect to what are asserted in this appeal to be incomplete instructions.

"[A]s this specification of error does not contend that the defense counsel did not have a reasonable opportunity to examine the instructions, we believe that Section 29–21–33, North Dakota Century Code, has been complied with and thus the right to raise an objection to the instructions on appeal has been waived."

State v. Carroll, 123 N.W.2d 659, 670 (N.D.1963).

■ With respect to specification No. 3 above stated, this has no merit. Since the information was based on subsection 2 of Section 12–41–14 and the jury could reasonably have found from the evidence that the defendants, Fay Heasley and Selma Heasley, were guilty of willful trespass thereunder, whether or not these defendants were requested by the sheriff or anyone else to leave the lands trespassed upon is immaterial.

Likewise, defendants' specifications 4, 5 and 6 have no merit. State's Exhibit 1 is a photocopy of a receiver's deed dated March 25, 1960, conveying the Southeast Quarter of Section 24, Township 138, Range 66, Stutsman County, North Dakota and other lands, to Arvel Glinz and Marjorie Glinz, and State's Exhibit 2 is a photocopy of an amended order confirming sale of said lands to Arvel Glinz and Marjorie Glinz, dated April 8, 1960. After the trial court had sustained objection to said exhibits by defendants' counsel for lack of foundation, the State's Attorney requested the court to take note that both documents were certified August 17, 1970, as true and correct copies of documents recorded in the office of the Register of Deeds for Stutsman County, North Dakota. There was no further objection and State's Exhibits 1 and 2 were received in evidence. State's Exhibit 3 is a photocopy of a mortgage dated May 12, 1964, covering said lands showing Arvel Glinz and Marjorie Glinz as mortgagors. State's Exhibit 4 is a photocopy of a mortgage deed dated October 22, 1968, covering said lands showing

Arvel Glinz and Marjorie Glinz as mortgagors. State's Exhibit 5 is a photocopy of a judgment in the United States District Court dated March 10, 1961, quieting title to said lands in Arvel Glinz and Marjorie Glinz. State's Exhibit 6 is a photocopy of a judgment in the North Dakota District Court, Fourth Judicial District, dated August 13, 1965, dismissing a complaint and counterclaim in an action to quiet title to said lands. State's Exhibits 3, 4, 5, and 6 were also certified August 17, 1970, as true and correct copies of documents recorded in the office of the Register of Deeds for Stutsman County, North Dakota.

█ In objecting to Exhibits 3, 4, 5 and 6 defendants' counsel asserted they were being offered without proper foundation or showing of relevancy. These contentions are unfounded. The Exhibits constitute prima facie evidence pursuant to Section 31–10–01 of the North Dakota Century Code and the trial court invoked Section 31–10–02 (41) of the North Dakota Century Code. Said sections read as follows:

"31–10–01. Evidence of facts judicially noted not required—How judges familiarized with such facts.—No evidence of any fact of which the courts take judicial notice need be given in any civil or criminal action or proceeding pending in this state by the party alleging its existence, but any judge asked to take judicial notice thereof, if unacquainted with such fact, may refer to any person, document, or book of reference for his satisfaction in relation thereto, or may refuse to take judicial notice thereof unless and until the party making the request produces any such document or book of reference."

"31–10–02. Facts subject to judicial notice.—Every court of this state will take judicial notice:

. . . . . .

"41. Of the official acts of public officers;

"42. Of the officers in the county in which the court is sitting and the genuineness of their signature and those of such deputies as the law authorizes;"

█ The documents speak for themselves as to relevancy. They all relate to the lands described in the information and ownership thereof by Arvel Glinz and Marjorie Glinz.

█ State's Exhibit 8 is an 8x10 in. enlargement of a photograph of Fay Heasley. James Smorada, the newspaper reporter, testified that he took the photograph with his 35-mm. camera and that Exhibit 8 is an accurate representation of what he saw at the Glinz farmstead while he was there with the Sheriff and State's Attorney, May 19, 1970. The specification of error is rejected as we find the foundation for receiving the exhibit was sufficient.

█ Defendants' objections to State's Exhibits 9 and 10 as set forth above in specification of error 8 are also rejected. These exhibits are 8x10 in. enlargements of 35-mm. negatives. Exhibit 9 is a photograph of an 8x10 in. cardboard sign tacked to a plywood backing received in evidence without objection as State's Exhibit 7. This sign reads: "NO TRESPASSING ALLOWED. Name: Fay and Selma Heasley, title owners and trustee. Date: May 19, 1970. Address: Eldridge, North Dakota. Sec. 24, Twp. 138, Range 66." Exhibit 10 shows a view of Sheriff Gutzwiller's back while in a discussion with Fay Heasley and Selma Heasley in the Glinz farm house. The Sheriff is wearing his holster belt with his pistol in the holster. James Smorada also testified that he took both photographs with his camera and that Exhibits 9 and 10 are accurate representations of what he saw while at the Glinz farm home, May 19, 1970. Foundation is adequate and the exhibits are relevant. It cannot be seriously contended that they are calculated to inflame the minds of the jurors.

"The use of photographs in criminal trials has been previously upheld by this court. It is largely within the discretion of the trial court. State v. Gill, 154 N.W. 2d 791, 798 (N.D.1967)."

State v. Iverson, 187 N.W.2d 1, 37 (N.D. 1971).

 In specification of error 9 objection is to the court's definition of the word "willfully" given in its instructions, as follows:

"WILLFULLY: The word 'willfully,' when applied to the intent with which an act is done, implies simply a purpose or willingness to commit the act referred to, and one who with full knowledge of the facts which make his claim of title invalid, enters upon the property and commits an act of trespass is a 'willful trespasser,' within the meaning of the law, even though he honestly believes that under such known facts, the law confers good title on him."

Appellants contend that the fundamental point in this case is that Fay Heasley and Selma Heasley claim ownership of the lands trespassed upon and that whether or not their claim is reasonable is a question for the jury.

The question for the jury was whether or not Fay Heasley and Selma Heasley did willfully enter upon land belonging to or in the possession of Arvel Glinz and Marjorie Glinz with the purpose of injuring the property right of Arvel Glinz and Marjorie Glinz. The court's instruction defining "willfully," in effect, left said question with the jury.

The instruction could not be prejudicial to the defendants and was not erroneous.

Disposition of defendants' specification of error 10 has been made as a result of our conclusions regarding specifications of error 1 and 2. The information was sufficient and defendants' motion to dismiss the same was properly denied.

In conclusion, we find that the defendants had a fair trial and we therefore affirm the judgment.

STRUTZ, C. J., and TEIGEN, ERICKSTAD and KNUDSON, JJ., concur.

PAULSON, J., deeming himself disqualified, did not participate; A. C. BAKKEN, District Judge of the First Judicial District, sitting in his stead.