The STATE of North Dakota, Plaintiff and Appellee,

v.

Rick KRINGSTAD, Defendant and Appellant.

Cr. No. 976.

Supreme Court of North Dakota.

July 11, 1984.

Neil W. Fleming [argued], of Fleming & Dubois, Cavalier, for defendant and appellant.

Nicholas B. Hall, State's Atty., Grafton, for plaintiff and appellee.

GIERKE, Justice.

The defendant, Rick Kringstad, appeals from a judgment of conviction of the crime of gross sexual imposition and from an order denying his motion for a new trial. We vacate the judgment and remand.

Kringstad and his co-defendant, David Oasheim, were charged with having forcibly compelled the victim to submit to an act of sexual intercourse in violation of § 12.1–20–03(1)(a) of the North Dakota Century Code. The criminal complaint alleged the act took place between 12 o'clock midnight and 12:30 a.m. on July 9, 1983, in Hoople, North Dakota. The defendants were tried together before a jury. The only direct

evidence linking them to the crime was the testimony of the complainant.

The complainant testified that during the evening of July 8, 1983, she and her husband went to Duffy's Bar in Hoople at approximately 10 p.m. She drank 1½ mixed drinks while at Duffy's. After thirty minutes the couple left Duffy's and went to the American Legion Club, also in Hoople, to listen to a locally popular band. They arrived at the Legion at 10:45 p.m. where they danced and visited with friends and relatives. The complainant drank an additional 1¼ mixed drinks while at the Legion. At approximately midnight she complained to her husband that she didn't feel well and wanted to go home. Her husband asked her to wait a few minutes and she responded that she would wait in the car.

The complainant further testified that she had been sitting in the car for only a short time when Kringstad and David Oasheim approached the car and told her that her husband had asked them to take her home. When she refused to leave with them, the two men pulled her from the car and carried her behind a nearby building. According to the complainant, she was then held by Oasheim, and one or two other persons she couldn't identify, while Kringstad had intercourse with her.

The complainant also testified that for some time prior to the incident, and as recently as the day before, she had been harassed by Kringstad and Oasheim. This harassment took the form of driving past her home in Kringstad's car and making suggestive remarks and peering at her through binoculars. Her testimony in this regard was partially corroborated by a next-door neighbor who witnessed at least two of the incidents.

At trial Kringstad and Oasheim presented separate alibi defenses. Kringstad testified that he had been in the Legion Club during the time the assault is alleged to have taken place and presented the corroborative testimony of a number of relatives who were in the Club that evening. Testimony was also presented which, if believed, would indicate that the complainant had consumed considerably more than the two-three drinks to which she admitted. Both defendants denied any harassment of the complainant.

The jury returned verdicts of guilty as to both Kringstad and Oasheim. Each defendant then presented a motion for a new trial. The trial court granted Oasheim a new trial, but denied Kringstad's motion. Kringstad appeals from that denial.

Five issues are presented on appeal:

1. Did the trial judge abuse his discretion in denying the motion for a new trial?

2. Did the trial court commit prejudicial error in allowing the prosecution to cross-examine Kringstad regarding a criminal complaint lodged against him of which he had no notice.

3. Did the prosecution fail to comply with Kringstad's Rule 16 discovery motion and, if so, was that failure prejudicial and therefore grounds for a new trial?

4. Did the trial court commit prejudicial error in allowing the introduction of photographs of the unprotected scene of the crime, taken some five hours after the crime occurred?

5. Did the trial court commit prejudicial error in refusing to allow Kringstad to introduce evidence of a prior accusation of rape lodged by the complainant against her ex-husband?

We will discuss these issues in the above order.

I

Rule 33(a) of the North Dakota Rules of Criminal Procedure provides that "The court on motion of a defendant may grant a new trial to him if required in the interests of justice. The motion for a new trial shall point out with particularity the defects and errors complained of." Kringstad contends that the evidence presented by the State was insufficient to warrant a finding of guilt beyond a reasonable doubt. He also contends that, even if the State's

evidence was legally sufficient, the jury's verdict was against the weight of the evidence and that the trial judge abused his discretion in denying Kringstad's motion for a new trial.

We begin our discussion of these issues by distinguishing between evidentiary sufficiency and evidentiary weight. A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jenkins*, 326 N.W.2d 67 (N.D.1982); *State v. Olson*, 290 N.W.2d 664 (N.D.1980). When a court, be it an appellate court or a trial court on motion for entry of a judgment of acquittal, concludes that evidence is legally insufficient to support a guilty verdict, it concludes that the prosecution has failed to produce sufficient evidence to prove its case. *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661 (1982). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars retrial in such a case. *Tibbs v. Florida, supra.* It follows, therefore, that our review of an appeal founded upon alleged evidentiary insufficiency must be subject to the same standard as an appeal from a judgment of guilty, or an appeal from the denial of a motion for entry of a judgment of acquittal; that is, we will look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to determine if there is substantial evidence to support the conviction. *State v. Olson, supra.*

It is well established in North Dakota that the uncorroborated testimony of a rape victim is sufficient to establish all of the elements of the crime. *State v. McLain*, 312 N.W.2d 343 (N.D.1981); *State v. Olmstead*, 246 N.W.2d 888 (N.D.1976), *cert. denied* 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). In the instant case, the victim testified as to all of the essential elements of the crime of gross sexual imposition as defined in § 12.1–20–03(1)(a), N.D. C.C. Her testimony and that of the other witnesses presented by the State is legally sufficient to support the jury's verdict in this case.

When a motion for a new trial is made on the ground that the verdict is against the weight of the evidence the issues are far different. The trial judge may, within limits, weigh the evidence and in so doing evaluate for himself the credibility of the witnesses. In *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980), the Eighth Circuit Court of Appeals explained that:

"If the [trial] court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."

See generally 2 C. Wright, Federal Practice and Procedure § 553 (1969). In *Tibbs v. Florida, supra* 457 U.S. at 42, 102 S.Ct. at 2218, the United States Supreme Court stated that:

"A reversal on this ground [evidentiary weight], unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the ... court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause."

As the Supreme Court stated in *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972):

"... that rational men disagree is not in itself equivalent to a failure of proof by the state, nor does it indicate infidelity to the reasonable doubt standard."

■ This court, too, has recognized that it is within the discretion of a trial court to grant a new trial if it concludes that a guilty verdict is against the weight of the evidence. *State v. Dilger*, 338 N.W.2d 87, 96 (N.D.1983); *State v. Olmstead*, 261 N.W.2d 880 (N.D.1978). In North Dakota, however, that discretion is somewhat more restricted than the discretion implied by the United States Supreme Court's statement in *Tibbs v. Florida, supra*, that a court sits as a "thirteenth juror".[1] *See Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977). The standard to be applied in determining whether or not the trial court has abused its discretion was enunciated by this court in *Kohlman v. Hyland*, 56 N.D. 772, 219 N.W. 228, 230–231 (1928):

> "The discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. *State v. Stepp*, 48 N.D. 566, 185 N.W. 812; *State v. Weber*, 49 N.D. 325, 191 N.W. 610; *Kansas P. Ry. Co. v. Kunkel*, 17 Kan. 145. 'We do not mean,' says Justice Brewer in the Kansas case, *supra*, at page 172, 'that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury.'"

■ A motion for a new trial is committed to the sound discretion of the trial court and its judgment is conclusive unless we can say that, in denying the motion, such judgment was abused. *State v. Dilger, supra; State v. McLain, supra*.

In denying Kringstad's motion the trial court reviewed the evidence and concluded there was substantial circumstantial evidence to support the jury's verdict. In addition to the victim's testimony, other evidence was presented which, if believed, would indicate that Kringstad was not in the American Legion between midnight and twelve-thirty. The State also presented evidence which would tend to adversely reflect on the credibility of Kringstad's alibi witnesses. To cite but one example, Kringstad's sister, Cindy Gaylord, testified that she did not leave the Legion until twelve-thirty and that from midnight until twelve-thirty she and other members of the Kringstad family visited with the defendant at a table in the Club. The State presented the testimony of Dale Torbenson and Calvin Iverson. Both witnesses were present at the Club that evening and testified that they saw Cindy Gaylord leave before midnight. Torbenson testified that he had stepped outside shortly before or during the band's final break, at approximately midnight, and that he saw Cindy walk by and get into her car.

■ In view of the sharply conflicting evidence concerning Kringstad's whereabouts during the critical time, we find no error in the trial court's conclusion that the jury's verdict was not against the weight of the evidence. In a case such as this, where the evidence is fairly evenly balanced, and the jury's verdict is supported by legally sufficient evidence, there can be no abuse of discretion in denying a motion for a new trial.

II

Kringstad's second issue pertains to the prosecution's introduction, on cross-exami-

---

1. Whether a state trial judge may act as a "thirteenth juror" is a question of state law. *Hudson v. Louisiana*, 450 U.S. 40, 44 n. 5, 101 S.Ct. 970, 973, 67 L.Ed.2d 30 (1981).

nation, of a previous, unrelated criminal complaint allegedly lodged against him.

On direct examination, Kringstad's counsel asked him if he had ever been accused of a crime, arrested for a crime, or convicted of a crime. Kringstad's response to each question was: "No". On cross-examination the following exchange occurred between the prosecutor and Kringstad:

"Q You recall on direct testimony to Mr. Fleming you said you have never been charged, arrested, convicted of any crime except for a traffic violation. Is that a resume of your testimony?

"A Yes, but—

"Q Is that the truth?

"A My brother has a certain incident that I also got dragged into.

"Q Your brother had a certain incident you were dragged into. Does that mean charged with something?

"MR. FLEMING: I object. Specifically it is not proper impeachment. Counsel knows it.

"THE COURT: The objection is sustained with regard to that.

"You know the rules with regard to impeachment in conviction of crimes.

"MR. GOULET: Your Honor, however the direct testimony was, was he ever charged, and Mr. Fleming opened it up on the direct testimony.

"THE COURT: That is true. You did ask that question, Mr. Fleming, if he had ever been charged with a crime.

"MR. GOULET: Ever been arrested or ever been convicted.

"THE COURT: The objection is overruled. You may inquire.

"Q Okay, in response to the question, whether you had been charged, you said, never.

"A Exactly, charged means I have not.

"Q Were you ever charged with a Class A Misdemeanor?

"A A Class A Misdemeanor?

"Q Yes.

"A No.

"Q Did you ever retain an attorney in respect to a breaking into a home?

"A No, I did not.

"Q You never retained Mr. Richard Geiger?

"A I did not.

"Q Who did?

"A My brother Stephen did.

"Q Were you also charged with breaking into that home?

"A I went into to get it, but it wasn't stated in the paper.

"Q You were charged with a crime?

"A I did not consult an attorney.

"Q I am asking whether or not you were charged with a crime?

"A It didn't mention my names in the paper.

"THE COURT: Do you understand the question?

"A Not too—

"THE COURT: You know what a charge means?

"A It means when you are charged with—

"THE COURT: Yes, by the authorities.

"A And I consider a charge to be thrown in jail and the trial and names and stuff in the paper.

"Q Okay, you did not consider the fact that you were accused by a court of breaking into Mark Russell's on that very day two years ago, as a charge?

"A I didn't break into the home.

"Q Did you pay money for damage done in that home?

"A No, I did not.

"Q Who paid him for damage to the paneling and dining room drapes?

"A My brother Steve.

"Q Who did—

"MR. FLEMING: I would object to that line of questioning by the Miranda, by the fact that it was done by this Defendant's brother. Counsel knows better than that.

"THE COURT: Mr. Goulet, I don't want to get into a colateral *[sic]* trial on another charge and do not want to dwell on this subject. I think he has sufficient-

ly answered the question and unless you—

"MR. FLEMING: I move the entire testimony be stricken and the Jury admonished.

"THE COURT: That has been denied. That subject has been opened up on direct examination."

■ Kringstad argues that the probative value of this line of questioning was substantially outweighed by its prejudicial effect. Rule 403, N.D.R.Ev. The question of balancing the probative value against the risk of unfair prejudice is one for the trial judge to resolve in the exercise of his sound discretion. *State v. Olson,* 290 N.W.2d 664, 669 (N.D.1980).

It appears from the prosecutor's statements found elsewhere in the transcript that approximately two years before these proceedings, a complaint was filed in the state's attorney's office alleging that Kringstad and his brother had committed some acts of vandalism. We have not been provided with a copy of the complaint. The State admits that it has no proof that a copy of the complaint was ever served on Kringstad; that he was ever arrested; that he ever appeared before a court of law in regard to the complaint; or that he was ever convicted of any crime.

The only purpose for which evidence of this previous complaint was admissible was to impeach Kringstad's credibility. In a case such as this, where a resolution of the factual questions is almost entirely dependent on the testimony of witnesses rather than physical evidence, any evidence affecting Kringstad's credibility is obviously highly relevant. Kringstad's counsel, by his questions on direct examination, opened up the possibility of the introduction of the complaint. Its admissibility for the purpose of attacking Kringstad's credibility, however, is dependent on Kringstad's knowledge of its existence. He cannot be charged with lying about something of which he has no knowledge.

Furthermore, the trial judge made no effort to inquire into the possibility of prejudice resulting from this line of questioning. That the result of the questioning was prejudicial is apparent. Not only was Kringstad's credibility seriously damaged by reference to the complaint, but through the questioning the prosecutor informed the jury that the property he was allegedly accused of vandalizing belonged to the husband of the rape victim. The prosecution was also able to establish, by implication, that Kringstad was involved in the commission of a crime and, again by implication, that he was guilty of the crime but escaped punishment by paying the alleged victim the damages caused by the vandalism. Although Kringstad denied any involvement in the alleged crime the prejudice arising from the prosecutor's implications is obvious.

The transcript reveals that the trial judge, on due reflection, recognized that error had been committed in allowing the prosecution to cross-examine Kringstad regarding the complaint. Following the close of all testimony, at a hearing in chambers, the trial judge stated:

"THE COURT: Let me say this. I am sorry this matter was ever brought in front of the jury. I feel, Mr. Fleming, that by your questioning, which I incidentally wondered about at the time, left open the fact that this type of thing could be brought.

"My recollection is Mr. Hall said you said in your opening statement, and I don't remember that. But the gist of your questioning to Mr. Kringstad was, have you ever been—you wanted to cover all the bases. You said, have you ever been arrested and charged. I am not sure exactly what words you used, but you used words beyond conviction to which he answered, no. And apparently that is the matter Mr. Hall is talking about. And so, the State gets into it.

"The only reason for the State to get into it was to attack credibility, but the Court has been around the bend a few times and I know it has a highly prejudicial effect on the Defendant, even the hint of any criminal activity.

"The Court is going to instruct the Jury that this entire matter of being charged, whether he was charged or wasn't charged or a reference to burglary, that should be completely ignored, and has no bearing whatsoever on this case, and I am going to—You won't have a chance to take any exception, except that you indicated here on the record you did not want an instruction. I am going to make an instruction but I don't know myself what I am going to say, so anything I say will be deemed excepted to by both parties but I feel in fairness to the Defendant Kringstad that that matter should not be floating around out there and I am going to do everything in my power—".

 The State contends that, even assuming it was error to allow cross-examination concerning the complaint, the error was cured by the trial court's subsequent admonition to the jury. The jury is presumed to follow the instructions provided by the court. *State v. McLain,* 301 N.W.2d 616 (N.D.1981). The difficulty with the State's position, however, is that the record does not reveal what instruction or admonition was given to the jury or that any such instruction, in fact, was given. Neither the transcript nor the printed jury instructions contained in the record on appeal make any reference to the State's cross-examination of Kringstad concerning the complaint. We are therefore unable to review the instruction to determine if it was sufficient to cure the error. Under the totality of the circumstances of this particular case, where the defendant's credibility is of paramount importance and the evidence is closely balanced, we will not simply assume that the instruction was sufficient. We must resolve all doubts as to its sufficiency in favor of the defendant. We therefore conclude that Kringstad is entitled to a new trial.[2]

**2.** That the evidence was closely balanced is apparent from the trial court's award of a new

## III

The defendant has raised three other issues on appeal. The first of these concerns the prosecution's failure to make available to defense counsel certain investigative reports prepared by agents of the county and State. We need not address this issue in view of the fact that we have ordered that a new trial be had and that the defendant now has copies of these reports.

The remaining two issues are likely to be argued again on retrial and we will therefore address them.

 The first of these concerns the admission into evidence of some photographs of the scene of the crime taken approximately five hours after the incident took place. The admissibility of evidence is committed to the sound discretion of the trial court. *State v. Engel,* 289 N.W.2d 204 (N.D.1980); *State v. Heasley,* 196 N.W.2d 896 (N.D.1972); *State v. Gill,* 154 N.W.2d 791 (N.D.1967). Kringstad again claims that these photographs were irrelevant and that their probative value is outweighed by prejudice. Rule 402, N.D.R. Ev., provides that the relevant evidence is generally admissible. Rule 401, N.D.R.Ev., defines "relevant evidence" as:

"... evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Photographs of the condition of the scene of the alleged crimes certainly has a tendency to make the facts at issue more or less probable. The only prejudice arising from the admission of the photographs is that it tends to establish that something did, in fact, occur. Unfair prejudice, however, results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less probable, *e.g.,* that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury, or otherwise tends to affect adversely the

trial in the case of Kringstad's co-defendant.

jury's attitude towards the defendant, wholly apart from its judgment as to his guilt or innocence of the crime charged. *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir.1982). No substantial prejudice arose from the introduction of these photographs. The weight to be accorded them, due to the delay in taking the pictures, is left for the jury's determination. The trial court committed no error in admitting them into evidence.

The final issue raised by Kringstad on this appeal concerns a prior accusation of rape made by the complaining witness against her ex-husband. The trial court denied a defense request to introduce evidence of this accusation on cross-examination of the complaining witness. Kringstad seeks to impeach the credibility of the plaintiff with evidence that she previously accused another man of raping her. Such evidence falls under Rule 405, N.D.R.Ev., as proof of character by inquiry into specific instances of conduct. Such evidence is admissible only if relevant.

 Courts have held that prior truthful charges of rape are not relevant in cases such as this. *Hughes v. Raines*, 641 F.2d 790, 792–793 (9th Cir.1981); *People v. Shepherd*, 37 Colo.App. 336, 551 P.2d 210, 212 (1976); *State v. Forehand*, 17 N.C.App. 287, 194 S.E.2d 157, 159 (1971), Evidence of one truthful charge of rape does not make the truthfulness of a subsequent rape charge "less probable than it would be without the evidence". Rule 401, N.D. R.Ev. Thus, to be relevant in this case, the prior charge of rape must necessarily have been false.

The complainant accused her former husband of rape in regard to an incident which took place while their divorce was pending. The accusation was made to the complainant's attorney and the matter was never considered by law enforcement agencies or by the courts.

 The courts have held that the falsity of a previous charge must be proved by some quantum of evidence. For example, in *Little v. State*, 413 N.E.2d 639 (Ind.App. 1980), the court stated that previous accusations "must be demonstrably false". In *State v. Demos*, 94 Wash.2d 733, 619 P.2d 968 (1980), the court held that rape complaints which were "arguably false" failed to sufficiently establish falsity and were therefore not relevant. In *Hughes v. Raines*, 641 F.2d 790 (9th Cir.1981), the court stated that the probativeness and, hence, relevance of a prior charge of rape "would depend upon whether it could be shown convincingly that the other charge was false".

 The unsubstantiated testimony of the complainant's former husband would not constitute a quantum of evidence sufficient to establish the falsity of the previous charge. Kringstad made no offer of proof which would corroborate the former husband's testimony. The trial court did not therefore abuse its discretion in refusing to allow cross-examination of the complainant regarding this prior charge.

For the reasons expressed in the opinion, the judgment entered in the district court is vacated and the case is remanded for a new trial.

ERICKSTAD, C.J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

Both the judgment of conviction and the order denying Kringstad's motion for new trial should be affirmed. There may very well be authority for the proposition that the trial judge can be made into a "super-juror number thirteen" by an appropriate motion using the proper "magic words." But it violates my sense of justice for the members of this court to become "super-jurors numbered fourteen, fifteen, sixteen, seventeen and eighteen."

Time restraints prevent me from doing more than noting my objection. In my view there was no reversible error; a defendant is not entitled to a perfect trial; no showing has been made that trial court discretion has been abused. See *State v. Allen*, 237 N.W.2d 154 (N.D.1975); *State v. Iverson*, 187 N.W.2d 1 (N.D.1971); *State v.*

*Marmon,* 154 N.W.2d 55 (N.D.1967); *State v. Carroll,* 123 N.W.2d 659 (N.D.1963); and *State v. Moore,* 101 N.W.2d 579 (N.D.1960).