[File No. Cr. 218]

THE STATE OF NORTH DAKOTA, Respondent, v. ART SEEB, Appellant.

(37 NW2d 341)

474

Opinion filed April 26, 1949.

E. J. McIllraith (*Walter O. Burke* on brief), for appellant.

*Wallace E. Warner,* Attorney General, *H. L. Halvorson,* State's Attorney, *C. B. Davis,* Assistant State's Attorney, and *Joseph J. Funke,* for respondent.

GRIMSON, District J. The defendant Art (Arthur) Seeb was tried in the district court of Ward County on a charge of having committed the crime of assault with intent to commit rape. At the close of the State's evidence the defendant moved for a directed verdict in his favor on the ground "that the State has wholly failed to prove the essential allegations of the crime charged in the information." The motion was denied. Thereupon the defendant took the witness stand and presented his side of the case. When both sides had rested the defendant moved "that the jury be directed to return a verdict acquitting the defendant of the crime of 'assault with intent to commit rape'

upon the ground that the State had wholly failed to prove the allegations of the information." The motion was again denied. The jury found the defendant guilty.. A motion for a new trial was made on the grounds that the court erred in denying the two motions for directed verdict, and, further, that the verdict was contrary to the law and clearly against the evidence adduced on the trial. The court denied the motion. An appeal was taken from the order denying the motion for new trial and the same grounds were assigned as specifications of error on the appeal.

There was no error in the denial by the court of the motions to direct a verdict for the defendant on the ground that the State had failed to prove assault with intent to commit rape. Under our statutes the court has no authority to direct a verdict in criminal cases. The court may advise the jury to acquit the defendant. "But the jurors are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict." ND Rev Code, 1943, § 29-2137. That applies to any crime included in the information. No error can be predicated on a refusal to advise or direct a verdict. State v. Wright, 20 ND 216, 126 NW 1023, Ann Cas 1912C 795. See, also, Note: 17 ALR 910, 936.

The State's Attorney at the close of the State's case announced "If it may please the court I have inquired of Mr. Burk and he is willing to stipulate that Miss Brieher and Mr. Seeb are not married; that the situs was in Ward County." Immediately thereupon the State rested and the defendant made his motion for a directed verdict.

The inference from the record is that Mr. Burk, the defendant's attorney, was present and made no objection to the State's Attorney's announcement. That must be regarded as an assent thereto. William H. Low Estate Co. v. Lederer Realty Co. 39 RI 422, 98 A 180. His subsequent examination of the defendant and conduct of the case indicates his acquiescence in such stipulation. The evidence hereinafter set out fully justified him therein. In any event under the circumstances the jury had the right to consider the evidence in the light of that undisputed announcement.

The only questions now raised are on the sufficiency of the evidence with regard to the non-marriage status of the defendant and the prosecutrix and the situs of the crime. The jury were properly instructed that both these matters as well as all the other material allegations of the information had to be proven beyond a reasonable doubt before the defendant could be found guilty of the crime charged.

That the defendant and prosecuting witness were not husband and wife may be proven by indirect as well as direct evidence. As said in the case of State v. Johnson, 58 ND 832, 227 NW 560, "like any other fact, it may be proved by facts and circumstances from which the conclusion of nonmarriage may be drawn "

The evidence in the case at bar shows that the prosecutrix was a young girl only 17 years of age; that she was attending Teachers' College at Minot and was referred to on the trial, by both the State's Attorney and the defendant's attorney, as "Miss Brieher"; that she had first met the defendant about the middle of June 1947; that their acquaintance had been rather casual although he had visited her quite frequently at her rooming house; that he had informed her he worked on the railroad but she did not know what his work there was; that she did not know how old he was; that she had never been out with the defendant until the date of the alleged offense, August first, 1947; that he had said he would leave his car with her when out of town but that she had to show him that she could drive and it seems that she was doing that when the offense occurred. From these circumstances the jury could find that the prosecutrix and the defendant were not married. However, the defendant himself testified directly that he was a single man and had never been married. There was sufficient evidence to support the verdict of the jury on that question.

On the matter of the situs of the crime the evidence shows that the defendant and prosecutrix drove in an automobile west from Minot on highway No. 2 and No. 52 about 2 miles, turned south on a country road three-fourths of a mile, returned to highway No. 2 and No. 52 and continued west another 2 miles. Then they turned south towards the Great Northern trestle,

otherwise known as the Gassman bridge, for 20 rods, according to defendant. There the prosecutrix claimed the first assault took place. After that they returned to the highway, where defendant again turned west, drove to the junction of highways No. 2 and No. 52. He then drove 40 rods on No. 52, according to his own testimony, northwest towards Burlington. The prosecutrix claimed he there drove into a field and again attempted assault. Defendant admits he turned back to the highway and drove west 40 rods up the hill towards Des Lacs. There prosecutrix jumped out of the car, ran back down the hill, and was picked up by two men·on their way to their home 12 miles west of Minot. They turned and took her back to Minot followed by defendant. Defendant testified the place where prosecutrix got out of the car was only 2½ miles from the Great Northern trestle and that the whole trip covered only about 10 or 12 miles.

Thus it appears the first alleged assault occurred about 4 miles west and 20 rods south of Minot and the second one about 6½ miles west and 40 rods north of Minot.

It is true that there is no direct testimony that these places were within Ward County. The district court, however, was warranted in taking judicial notice "of the external boundary lines of its jurisdiction and that an act done or a crime committed at any given place within such boundary lines is within such jurisdiction;" ND Rev Code 1943, § 31–1002, Subd. 4, "of the limits of a county and the fact that a place proved was within such limits;" "of the lines of the counties and the townships, villages, and cities contained therein;" "of the history of a country, its topography, and general condition;" ND Rev Code 1943, § 31–1002, Subds. 35, 36, and 54; State v. Martin, 54 ND 840, 211 NW 585. The northern boundary of this part of Ward County is about 15 miles north of Minot, the western boundary is about 30 miles west of Minot, and the southern boundary is about 28 miles south of Minot. The topography described in the evidence further locates the area involved as within Ward County. There was sufficient evidence to show that the situs of the crime was within the jurisdiction of the

478

district court of Ward County and the jury was warranted in so finding.

The order appealed from is affirmed.

NUESSLE, Ch. J., CHRISTIANSON, MORRIS and BURKE, JJ., concur.

BURR, J., did not participate.