THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DeWAYNE D. EVANS, Defendant-Appellant.

Second District   No. 76-423

Opinion filed February 6, 1978.—Rehearing denied March 31, 1978.

Ralph Ruebner and Alan Goldberg, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko, Stephen M. Deitsch, and William L. Browers, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendant-appellant, DeWayne D. Evans, hereinafter referred to as the defendant, was sentenced to 15-45 years in the penitentiary after

being found guilty of armed robbery by a Lake County jury. On appeal the defendant has raised four issues. First, he asserts he was denied effective assistance of counsel. Secondly, he argues that the trial court erroneously admitted certain items seized by the use of an allegedly invalid search warrant into evidence. Thirdly, the defendant contends he was denied due process of law when the trial court refused to hold a hearing on his motion to suppress his arrest as being made without probable cause. Fourthly, the defendant asserts that the trial court erroneously admitted incompetent and highly prejudicial evidence at his aggravation and mitigation hearing. Upon a review of the record and weighing the arguments presented, we are of the opinion that the judgment of the circuit court of Lake County must be affirmed.

On December 9, 1975, the defendant and two other men entered the Waukegan offices of Dr. Eugene Tapia. The defendant had disguised himself as a woman by wearing a woman's coat, slacks, and an Afro wig. Once inside, the defendant produced a sawed-off shotgun which he handed to one of his accomplices. This accomplice brandished the shotgun during the course of the armed robbery which yielded a purported $7,000. At trial, the defendant took the stand in his own behalf and testified that he had committed the "robbery" at Dr. Tapia's suggestion in exchange for the doctor's promise to provide him with some drugs.

Sergeant Kenneth A. Ryckman of the Waukegan Police Department and an informant, identified only as "John Doe," both appeared before Judge Robert McQueen on December 28, 1975, for the purpose of obtaining a search warrant for a certain apartment in Waukegan. Sergeant Ryckman and "John Doe" presented Judge McQueen with an affidavit signed by both men in which "John Doe" alleged that he had seen a sawed-off shotgun in the apartment some time after the December 9 robbery of Dr. Tapia and that he, "John Doe," had been informed that the sawed-off shotgun was the one that had been used in the robbery of Dr. Tapia. Thereupon, Judge McQueen issued a search warrant. Although the search warrant turned out to be for the defendant's apartment, the defendant was not named in either the complaint for the search warrant or in the supporting affidavit.

Judge McQueen also issued an arrest warrant for the defendant on the same date, December 28, 1975. The warrant was issued upon a complaint by Sergeant Ryckman alleging only that he had "reasonable grounds to believe and does believe" the defendant committed the armed robbery of Dr. Tapia's office. It would seem likely that this arrest warrant and the search warrant were issued at the same time, however, a search of the record fails to reveal any evidence to either confirm or exclude this possibility.

Sometime after the warrants were issued, a search of the described premises was conducted. The search produced two 12-gauge shotgun shells, a woman's coat, and a sawed-off piece of a gun stock. The apartment searched was occupied by the defendant, and he was arrested during the course of the search. Following his arrest and being given his *Miranda* warnings, the defendant admitted his participation in the crime during a conversation he had with Sergeant Ryckman. However, when the defendant's statement was reduced to writing, the defendant refused to sign it. At the defendant's trial, Sergeant Ryckman testified as to the details of his conversation with the defendant in which the defendant had admitted participation in the crime.

The defendant was charged by an information and was to be tried with Kenneth Davis, an alleged accomplice. Robert Houser, an assistant public defender, was assigned to defend both men. Plea negotiations ensued, and the State's Attorney made simultaneous plea offers to the defendant and Davis. If the defendant would plead guilty to armed robbery, the State's Attorney promised to recommend a term of four to six years in prison. If Davis, who drove the getaway car, agreed to plead guilty to the lesser included offense of robbery and to testify against the defendant if the need arose, the State's Attorney agreed to recommend a sentence of four years' probation with the first six months to be served in the county jail. Mr. Houser communicated these plea offers to each man and only to that man, so that the defendant did not know that part of the plea bargain offered to Davis was an agreement on Davis' part to testify against the defendant. The defendant rejected the plea offer made to him, while Davis accepted the offer made to him. Because of the readily apparent conflict between the interests of his two clients, Mr. Houser asked for and was given leave to withdraw as counsel for the defendant. The court then appointed Robert Will to defend the defendant.

Prior to trial, the defendant moved to quash the search warrant and to suppress the evidence seized thereunder. The defendant also moved to suppress his arrest and the statements made thereafter on the grounds that the arrest was made without probable cause. The motion to quash the search warrant and the evidence seized thereunder was denied after a hearing. The motion to suppress the defendant's arrest and the statements made thereafter was denied without a hearing after it was determined that there had been an arrest warrant issued for the defendant. The defendant still desired to call the arresting officer, Sergeant Ryckman, in an attempt to show that the arrest was made without probable cause. The trial court refused to grant the defendant such permission, believing the arrest warrant established probable cause and therefore the defendant could not look behind the warrant to examine the basis upon which it had been issued.

The case proceeded to trial, which resulted in the jury's finding the defendant guilty of armed robbery. At the defendant's aggravation and mitigation hearing, the State presented Earl Woodward, superintendent of transportation for the Waukegan-North Chicago Transit Company, and Officer Frank Bullock of the Waukegan Police Department. Mr. Woodward testified to the effect that the offices of the Waukegan-North Chicago Transit Company had been burglarized on the night of October 30, 1975. Officer Bullock testified that the defendant admitted participation in the burglary during a conversation the officer had with the defendant on December 29, 1975. The burglary charge had previously been nol prosed by the State with the specific reservation that it would be allowed to introduce evidence of the crime at the defendant's aggravation and mitigation hearing for the armed robbery conviction. The defense counsel and the defendant stood by silently as the State's Attorney made the statement of his conditions for nol prosing the burglary charge. When defense counsel objected to the introduction of the testimony on the burglary on aggravation and mitigation, the trial court ruled that the defense counsel's silence at the proceeding where the burglary had been nol prosed was a sign of agreement by the defense, and allowed the testimony into evidence. After the aggravation and mitigation hearing, the trial court sentenced the defendant to a term of 15-45 years in the penitentiary. The defendant has appealed.

The first of the four contentions raised by the defendant is his assertion that he was denied effective assistance of counsel. The alleged deficiency occurred when Mr. Houser withdrew as counsel for the defendant without informing the defendant that Davis, his co-defendant, had accepted a plea bargain requiring Davis to testify against the defendant if the need arose. The defendant argues that the failure to inform him of the conditions of the offer made to Davis precluded him (the defendant) from making an intelligent decision with regard to the plea offer made by the State to him and thereby demonstrates the incompetency of his court-appointed counsel. We find this argument to be without merit.

■■ When called upon to review the competency of court-appointed counsel, a court of review applies a two-pronged test. First, it must be demonstrated that the court-appointed counsel was actually incompetent. Secondly, the court-appointed counsel's incompetency must result in actual substantial prejudice to the defendant. (*People v. Dudley* (1970), 46 Ill. 2d 305, 263 N.E.2d 1, *cert. denied* (1971), 402 U.S. 910, 28 L. Ed. 2d 651, 91 S. Ct. 1386 (1971); *People v. Bouse* (1977), 46 Ill. App. 3d 465, 4 Ill. Dec. 907, 360 N.E.2d 1340.) In the case at hand, the defendant has failed to meet either of the prongs of the *Dudley* test. The sole evidence of the defense counsel's alleged incompetency was his failure to inform the defendant of the terms of the plea offer made to his co-defendant, Davis.

Since the offer was made to Davis and not to the defendant, we see no reason why the terms of that offer should have been communicated to the defendant. Furthermore, assuming arguendo that Mr. Houser should have told the defendant of the offer made to Davis, the defendant has not shown he was prejudiced by that failure. If the State received Davis' agreement to plead guilty and testify against the defendant before the defendant declined his own offer, the State could have withdrawn defendant's plea offer and proceeded to trial, no matter what the defendant desired. If the defendant declined the plea offer made to him before Davis accepted the offer made to him, the defendant still would have been without authority to compel the State to renew the plea offer.

■■ The second contention raised by the defendant is his assertion that the search warrant was invalid and therefore should have been quashed and all evidence seized thereunder should have been suppressed. The defendant attacks the search warrant with three different arguments. First, the defendant asserts that the warrant is defective because the requirements of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, with regard to the reliability of informants were not met. We find the defendant's reliance upon *Aguilar* to be misplaced. *Aguilar* set forth the standards for an affidavit for a search warrant based upon the information of an informant where the informant does not appear before the issuing judge. We find the record before us provides an adequate basis for concluding that the "John Doe" informant appeared before and was sworn by the issuing judge. *City of Chicago v. Adams* (1977), 67 Ill. 2d 429, 367 N.E.2d 1299, involves a situation where a search warrant had been issued on an affidavit signed only by a police officer. The affidavit alleged the officer had a conversation with a "John Doe" who gave the officer certain information which was the basis for the search warrant. The affidavit further alleged that the "John Doe" appeared before the court. The Illinois Supreme Court found the mere assertion that the "John Doe" appeared before the issuing court was insufficient in itself to establish that he did, in fact, appear before the court. However, the additional evidence brought out at the suppression hearing established that the "John Doe" appeared and was sworn by the issuing judge. That additional evidence was merely testimony from the complaining officer that the "John Doe" was sworn and gave testimony. Therefore the issuing court had an adequate basis for judging the credibility of the "John Doe". In the case at hand, we find the fact that the affidavit alleged "John Doe" appeared in court and the fact that the affidavit was signed by the "John Doe" provide us with an ample basis for concluding that the informant did, in fact, appear and was sworn by the issuing judge. Having the informant before him obviously gave the issuing judge a sufficient basis

for judging the informant's credibility, thereby satisfying *Aguilar's* underlying purpose of insuring that issuing judges do not become mere rubber stamps for police officers seeking warrants but are truly neutral magistrates making judicial determinations.

██ Next, the defendant cites *United States ex rel. Pugh v. Pate* (7th Cir. 1968), 401 F.2d 6, in support of the second front of his attack on the search warrant. The defendant claims an affidavit signed by a "John Doe" is constitutionally defective. Both the defendant's argument and the *Pugh* case were rejected by the Illinois Supreme Court in *People v. Stansberry* (1971), 47 Ill. 2d 541, 268 N.E.2d 431. We, of course, are bound by the decisions of the Illinois Supreme Court and accordingly follow the holding of *Stansberry* to the effect that the search warrant affidavit was not defective merely because it was signed by an informant who used an alias.

██ Thirdly, the defendant attacks the search warrant as being based on unduly stale information. We note the affidavit does not specifically state when "John Doe" saw the items described in the warrant but merely asserts he saw them sometime after December 9, 1975, the date of the armed robbery. Since the warrants were not issued until December 28, 1975, a possible period of 18 days could have transpired between the date "John Doe" saw the items and the date the warrants were issued. Initially, we observe that since the "John Doe" appeared before the issuing judge, in all due probability that judge determined more specifically when the informant made his observations. However, even if there was a passage of 18 days, we find the warrant was not based on unduly stale information. Sawed-off shotguns are relatively rare items and have an extremely limited use. Therefore it is unlikely that a person would transport such an item with any deal of frequency. The question now becomes whether or not it was unreasonable for the issuing judge to believe the sawed-off shotgun would still be in the defendant's apartment 18 days later. The only rule with regard to the time within which a complaint for a search warrant must be made is that it cannot be too remote. The passage of time merely affects the existence of probable cause. There is no hard-and-fast rule as to when the passage of time extinguishes probable cause. (*People v. Montgomery* (1963), 27 Ill. 2d 404, 189 N.E.2d 327.) Here, there was a possible period of 18 days between the time the informant saw the sawed-off shotgun in the defendant's apartment and the issuance of the search warrant. In *People v. Morrison* (1973), 13 Ill. App. 3d 652, 300 N.E.2d 325, the search warrant was upheld even though 40 days had passed between the last sighting of a sawed-off shotgun and the issuance of the search warrant. In California, a lapse of 31 days between the sighting by the informant and the issuance of a search warrant has been approved in the case involving the proceeds of

a home burglary (*People v. Superior Court* (1975), 49 Cal. App. 3d 160, 122 Cal. Rptr. 459), and in a similar Florida case, a delay of 32 days was approved (*Hess v. State* (Fla App. 1975), 309 So. 2d 606). Therefore we conclude that probable cause for the issuance of the search warrant existed, even if the full 18 days had passed between the time the informant observed the sawed-off shotgun in the defendant's apartment and the time the warrant was issued.

■■ The defendant's third contention is that he was denied due process of law when the trial court refused to permit him to call Sergeant Ryckman to establish that the defendant's arrest was made without probable cause. The trial court held that since the defendant had been arrested under a warrant, he could not challenge the sufficiency of the probable cause for that warrant. However, the complaint for the arrest warrant merely alleged Sergeant Ryckman had "reasonable grounds to believe and does believe" that the defendant committed the offense. A mere assertion of "reasonable grounds to believe" has been held to be a constitutionally deficient basis for issuing an arrest warrant. (*People v. Wattts* (1967), 36 Ill. 2d 467, 224 N.E.2d 257.) Therefore the trial court should have allowed the defendant to call Sergeant Ryckman to challenge the probable cause of the defendant's arrest. However, we find this to have been harmless error. The transcript of the trial reveals that the defendant was arrested during the course of the search in which the police had discovered incriminating evidence in the defendant's apartment. That search was made upon a valid search warrant. The discovery of the incriminating evidence gave the police probable cause to arrest the defendant without a warrant on the grounds that they had probable cause to believe the defendant had committed an offense. (Section 107—2 of the Code of Criminal Procedure 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 107—2).) The defendant's arrest being valid, it therefore follows that the incriminating statements the defendant made subsequent to his arrest were not the fruits of the poisonous tree as the defendant has contended.

■■ The defendant's final contention is that the trial court admitted prejudicial and incompetent evidence at the defendant's aggravation and mitigation hearing. The evidence consisted of testimony concerning a burglary charge that had been previously nolle prosed, with the State's specifically reserving the right to introduce evidence of the burglary charge at the defendant's aggravation and mitigation hearing. When the State announced its conditions for nolle prosing the burglary charge, it is uncontradicted that the defendant and his counsel stood by silently. We hold the defendant's silence amounted to an assent to a stipulation that the evidence of the burglary could be introduced at the defendant's aggravation and mitigation hearing. *People ex rel. Loft, Inc. v. Sexton*

1052

(1937), 165 Misc. 564, 1 N.Y.S.2d 7; *Palmer v. City of Long Beach* (1948), 33 Cal. 2d 134, 199 P.2d 952; *State v. Seeb* (1949), 76 N.D. 473, 37 N.W.2d 341; *Bloom v. Graff* (1949), 191 Md. 733, 63 A.2d 313; *Contra Costa County Flood Control & Water Conservation District v. Armstrong* (1961), 193 Cal. App. 2d 206, 14 Cal. Rptr. 68; *McBain v. Santa Clara Savings & Loan Association* (1966), 241 Cal. App. 2d 829, 51 Cal. Rptr. 78.

For the foregoing reasons we affirm the judgment of the circuit court of Lake County.

Judgment affirmed.

GUILD and RECHENMACHER, JJ., concur.