*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARRILLE STEPHON JORDAN,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2019

No. 342997
Wayne Circuit Court
LC No. 17-006704-02-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER LAMAR DAVIS,

        Defendant-Appellant.

No. 343435
Wayne Circuit Court
LC No. 17-006704-01-FC

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendants Carrille Jordan (Jordan) and his half-brother Christopher Davis (Davis) were tried jointly, before separate juries, on charges of two counts of first-degree premediated murder, MCL 750.316(1)(a); two counts of first-degree felony murder, MCL 750.316(1)(b); two counts of armed robbery, MCL 750.529; one count each of first-degree home invasion, MCL 750.110a; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Jordan's jury acquitted him of first-degree premediated murder, but convicted him of two counts of felony murder, two counts of armed robbery, and one count each of first-degree home invasion and felony-firearm. The trial court sentenced Jordan to two terms of life imprisonment without parole for the felony-murder convictions, 18 to 40 years in prison for each armed robbery conviction, and 6 to 20 years in prison for the first-degree home invasion conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-

-1-

firearm conviction. Davis's jury convicted him of first-degree home invasion and felony-firearm, and acquitted him of all remaining charges. The trial court sentenced Davis to 10 to 20 years in prison for the home invasion conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. Both defendants appeal as of right. We affirm defendants' convictions, but vacate Davis's sentence for first-degree home invasion and remand for resentencing on that offense.

Defendants' convictions arise from a shooting incident at an apartment building in Detroit on May 31, 2017. The building was a known location for selling drugs. Sometime between 4:00 and 5:00 a.m., residents heard several gunshots. At approximately 6:00 a.m., the police entered the apartment of 66-year-old Frank Welch and discovered the bodies of Welch and 28-year-old Monica Newman, both of whom had been fatally shot. A cabinet that was used to store drugs had been broken in to and was empty. A resident of the building, Willie Gilbert, testified that he heard two rounds of gunshots. After the second round, he looked out his window and saw defendant Davis walking away from the apartment building, toward the I-75 freeway. Surveillance recordings showed both defendants entering the apartment building through a window and then entering Welch's apartment. Both defendants gave police interviews in which they admitted entering Welch's apartment for the purpose of stealing drugs and an AR-15 rifle, but they both denied shooting either victim. At trial, both defendants argued that there were other suspects who could have shot the victims after the defendants left the apartment.

## I. DOCKET NO. 342997 (DEFENDANT JORDAN)

In Docket No. 342997, defendant Jordan raises issues through both appointed appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Jordan argues through appellate counsel that defense counsel was ineffective for not requesting a jury instruction on voluntary manslaughter as a lesser offense of felony murder. Jordan further argues in his Standard 4 brief that counsel was ineffective for not requesting jury instructions on third-degree home invasion, breaking and entering without permission, or entering without breaking as lesser-included offenses of first-degree home invasion.

Preliminarily, because defendant Jordan did not raise these ineffective-assistance claims in an appropriate motion in the trial court, and this Court denied his motion to remand, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527 (2003). The decision whether to request a lesser-offense instruction is a matter of trial strategy. *People v Sardy*, 216 Mich App 111, 116; 549 NW2d 23 (1996); *People v Robinson*, 154 Mich App 92, 93-94; 397 NW2d 229 (1986).

## 1. VOLUNTARY MANSLAUGHTER

In *People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013), this Court stated:

> When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is "supported by a rational view of the evidence." *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). To prove that a defendant committed voluntary manslaughter, " 'one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions.' " *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012), quoting *Mendoza*, 468 Mich at 535. However, provocation is not an element of voluntary manslaughter; rather, it is a circumstance that negates the presence of malice. *Mendoza*, 468 Mich at 536. In *People v Tierney*, 266 Mich App 687; 703 NW2d 204 (2005), this Court held that "[t]he degree of provocation required to mitigate a killing from murder to manslaughter 'is that which causes the defendant to act out of passion rather than reason.' " *Id*. at 714-715, quoting *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998). Further, "[i]n order for the provocation to be adequate it must be that which would cause a reasonable person to lose control." *Tierney*, 266 Mich App at 715 (citation and quotation marks omitted). Whether the provocation was reasonable is a question of fact; but if "no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id*. (citation and quotation marks omitted).

A rational view of the evidence did not support an instruction on voluntary manslaughter. There was no evidence of adequate provocation or evidence that the victims were killed in the heat of passion. Although there was evidence that a starter pistol was found in Welch's bedroom, it was found between the folds of his mattress and Welch was lying on top of his bed. There was no evidence suggesting that the pistol was used or produced by Welch before he was shot. In addition, there was no evidence of a struggle between any of the victims and the defendants before the victims were shot. No one heard any screams or other noises indicative of a struggle. In his statement to the police, Jordan denied that he was armed, and also denied that he was involved in a struggle with Welch. Indeed, Jordan denied that Welch saw him in the apartment. Jordan also denied shooting either victim and blamed their deaths on someone else. In sum, a rational view of the evidence did not permit the jury to find that Jordan killed the victims in the heat of passion caused by adequate provocation.

Furthermore, an instruction on voluntary manslaughter would have been inconsistent with the defense theory at trial. The defense theory was that Jordan was not involved in the victims' shooting deaths and that someone other than defendants was responsible for shooting the victims. Jordan has not overcome the presumption that defense counsel reasonably decided not to request an instruction on voluntary manslaughter as a matter of trial strategy.

## 2. FAILURE TO REQUEST LESSER-OFFENSE INSTRUCTIONS FOR FIRST-DEGREE HOME INVASION

In his Standard 4 brief, Jordan argues that defense counsel was ineffective for not requesting instructions on third-degree home invasion, breaking and entering without permission, or entering without breaking, as lesser-included offenses of first-degree home invasion. We disagree.

The record discloses that Jordan's defense strategy was to focus primarily on the murder charges. Video evidence showed Jordan and Davis entering Welch's apartment, and Jordan admitted to the police that he and Davis stole drugs and a firearm from the apartment. However, Jordan denied that he or Davis shot the victims. Given this evidence, Jordan has not overcome the presumption that counsel elected not to request lesser-offense instructions for the first-degree home invasion charge as a matter of trial strategy, because consideration of additional lesser offenses may have confused the jury or distracted it from focusing on the principal defense theory that the prosecution had not eliminated the possibility that someone else committed the murders.

Furthermore, a rational view of the evidence did not support the lesser-offense instructions. Third-degree home invasion, MCL 750.110a(4), can be a necessarily included lesser offense of first-degree home invasion. *People v Wilder*, 485 Mich 35, 42-46; 780 NW2d 265 (2010). In this case, the distinction between first-degree home invasion and third-degree home invasion depended on whether a felony or larceny, versus a misdemeanor, was committed inside the dwelling, or whether defendants were armed with a dangerous weapon, or whether another person was lawfully present inside the dwelling. *Id*. at 43-44. The facts showed that defendants stole a large amount of drugs (valued at several thousand dollars) and an AR-15 rifle, while Welch and Newman were present inside the apartment. No rational view of the evidence supported a finding that defendants committed only a misdemeanor and not a larceny upon entering the apartment, or that the apartment was not occupied. Because a rational view of the evidence did not support third-degree home invasion as a lesser-included offense, Jordan was not prejudiced by counsel's failure to request that instruction.

MCL 750.115(1), which proscribes breaking and entering without permission or entering without breaking, provides:

> Any person who breaks and enters or enters without breaking, any dwelling, . . . or structure used or kept for public or private use, or any private apartment therein, . . . or any other structure, whether occupied or unoccupied, without first obtaining permission to enter from the owner or occupant, agent, or person having immediate control thereof, is guilty of a misdemeanor.

MCL 750.111, which proscribes entering without breaking, provides:

> Any person who, without breaking, enters any dwelling, . . . or structure used or kept for public or private use, or any private apartment therein, with intent to commit a felony or any larceny therein, is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $2,500.00.

The element that distinguishes first-degree home invasion from the lesser offense of breaking and entering without permission or entering without breaking is whether Jordan intended to commit a felony or larceny while inside the dwelling. Even if this offense could be considered a lesser-included offense of first-degree home invasion, given the defense theory that Jordan and Davis staged a robbery for the purpose of stealing drugs and a firearm, but did not commit murder, a rational view of the evidence did not support an instruction on that lesser offense. Further, there was no evidence that Jordan was able to enter the apartment without a breaking, and Jordan admitted that Welch and Newman were inside the apartment when he and Davis entered the apartment and stole property. Because the evidence did not establish a factual dispute with respect to elements that distinguished first-degree home invasion from these lesser offenses, instruction on the lesser offenses would not have been appropriate. See *People v Heft*, 299 Mich App 69, 77; 829 NW2d 266 (2012). Accordingly, Jordan has failed to show that defense counsel was ineffective for not requesting these lesser-offense instructions.

## B. GREAT WEIGHT AND SUFFICIENCY OF THE EVIDENCE

Defendant Jordan next argues through appellate counsel that the evidence was insufficient to support his felony-murder convictions, and that these convictions are also against the great weight of the evidence. Jordan further argues in his Standard 4 brief that the evidence was insufficient to support his convictions of armed robbery and felony-firearm, and that those convictions also are against the great weight of the evidence.

## 1. SUFFICIENCY OF THE EVIDENCE

A defendant's challenge to the sufficiency of the evidence in support of a conviction is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We must view the evidence in a light most favorable to the prosecution to determine if a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and any reasonable inferences that can be drawn from the evidence may be sufficient to prove the elements of a crime. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses," *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005), and all conflicts in the evidence must be resolved in the prosecution's favor, *People v Jackson*, 292 Mich App 583, 587-588; 808 NW2d 541 (2011).

## a. FELONY MURDER

In *People v Carines*, 460 Mich 750, 758-759; 597 NW2d 130 (1999), our Supreme Court discussed the elements of felony murder:

The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

The facts and circumstances of the killing may give rise to an inference of malice. A jury may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm. Malice may also be inferred from the use of a deadly weapon.

"In situations involving the vicarious liability of co-felons, the individual liability of each felon must be shown. It is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants. In cases where the felons are acting intentionally or recklessly in pursuit of a common plan, liability may be established on agency principles. If the homicide is not within the scope of the main purpose of the conspiracy, those not participating are not criminally liable." [Citations omitted.]

The prosecution argued that Jordan was guilty of felony murder as a direct principal, or as an aider or abettor. To find that a defendant aided or abetted a crime, the prosecution must show that:

(1) the crime charged was committed by the defendant or another person, (2) the defendant performed acts or gave encouragement that assisted in the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [ *Id*. at 757-758.]

See also *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). An aider or abettor's state of mind may be inferred from all of the facts and circumstances of the crime. *Carines*, 460 Mich at 758. Factors that can be considered include a close association between the principal and the defendant, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Id*. at 758. "Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

Jordan argues that the evidence was insufficient to support his felony-murder convictions because there was no evidence that he or Davis shot the victims. We disagree.

It is undisputed that Welch and Newman were both fatally shot and that their bodies were discovered inside Welch's apartment. Although there was no direct evidence identifying the

shooter, the evidence supported an inference that Welch and Newman were shot and killed during a robbery. Welch was known to store drugs in his apartment. Witnesses heard gunshots between 4:00 and 5:00 a.m., and the police entered Welch's apartment at approximately 6:00 a.m. and discovered the bodies of Welch and Newman. The cabinet that Welch used to store drugs was empty. Jordan and Davis were connected to the offense by video evidence showing them entering the building near the time of the offense by climbing through a window and then "faking" an armed robbery just before entering Welch's apartment. In addition, Jordan admitted to the police that he and Davis entered Welch's apartment and stole drugs and an AR-15 firearm. There was no evidence that anyone else was in the apartment when the shots were fired. Moreover, Jordan told the police that Davis left the apartment first and headed toward the freeway while Jordan stayed behind to gather camera boxes. Jordan also said that he made sure the door was locked when he left Welch's apartment and then also headed toward the freeway. A resident of the building, Gilbert, testified that he heard two rounds of gunshots. After the second round, Gilbert looked out his window and saw Davis crossing the street and heading toward the I-75 freeway. This evidence permitted the jury to find that the victims were shot after Davis left the apartment, but while Jordan was still there, which supported an inference that Jordan shot the victims. Although Jordan claims that Gilbert and a person referred to as Mike were never eliminated as possible suspects, it was up to the jury to determine whether the evidence of their connection to Welch affected the weight and strength of the evidence linking Jordan to the victims' shooting deaths. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Jordan was guilty of felony murder, either as a direct principal, an aider, or abettor.

### b. ARMED ROBBERY AND FELONY-FIREARM

In his Standard 4 brief, Jordan argues that the evidence was insufficient to support his convictions of armed robbery and felony-firearm.

The elements of armed robbery are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Gibbs*, 299 Mich App 473, 490-491; 830 NW2d 821 (2013).]

The phrase "in the course of committing a larceny" is statutorily defined as including "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530; MCL 750.529. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

The prosecution's theory was that Welch and Newman were the victims of an armed robbery and were shot and killed by their assailant. Jordan does not dispute that the evidence was sufficient to show that he committed a larceny in Welch's apartment, but argues that there was no evidence that he possessed a weapon or that Welch or Newman were the subjects of an assault when the larceny was committed. We disagree. The fact that Welch and Newman were both fatally shot was sufficient to show that they were victims of a shooting assault by a person who was armed with a firearm, which qualifies as a dangerous weapon. Although Jordan argues that there was no evidence that either he or Davis shot the victims, as discussed earlier, the evidence was sufficient to enable the jury to find that Jordan shot the victims during the course of committing the larceny at Welch's apartment. Thus, the evidence was sufficient to support Jordan's convictions of armed robbery. Similarly, because it is undisputed that Welch and Newman were both shot by a firearm and because the evidence was sufficient to link Jordan to their shooting deaths, sufficient evidence supports Jordan's conviction of felony-firearm.

## 2. GREAT WEIGHT OF THE EVIDENCE

Jordan did not challenge the great weight of the evidence in an appropriate motion for a new trial in the trial court. Therefore, his great-weight arguments are not preserved. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011). We thus review this issue for plain error affecting Jordan's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

In *People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009), this Court stated:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993).

In *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998), our Supreme Court explained that, absent extraordinary circumstances, issues of witness credibility are for the jury and a reviewing court may not substitute its view of the credibility of the evidence for the jury's determination. The Court stated:

> We reiterate the observation in *Anderson v Conterio*, 303 Mich 75, 79; 5 NW2d 572 (1942), that, when testimony is in direct conflict and testimony supporting the verdict has been impeached, if "it cannot be said as a matter of law that the

testimony thus impeached was deprived of all probative value or that the jury could not believe it," the credibility of witnesses is for the jury.

Adding flesh to what is a more refined articulation of the formula that " '[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial,' " *United States v Garcia*, 978 F2d 746, 748 (CA 1, 1992), quoting with approval *United States v Kuzniar*, 881 F2d 466, 470 (CA 7, 1989), federal circuit courts have carved out a very narrow exception to the rule that the trial court may not take the testimony away from the jury. *Id*. at 470-471. Defining the exception, the federal courts have developed several tests that would allow application of the exception; for example, if the "testimony contradicts indisputable physical facts or laws," *id.*, "[w]here testimony is patently incredible or defies physical realities," *United States v Sanchez*, 969 F2d 1409, 1414 (CA 2, 1992), "[w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror," *Garcia, supra* at 748, or where the witness' testimony has been seriously "impeached" and the case marked by "uncertainties and discrepancies." *United States v Martinez*, 763 F2d 1297, 1313 (CA 11, 1985).

This does not mean that "[a] judge's disagreement with the jury's verdict," *United States v Arrington*, 757 F2d 1484, 1486 (CA 4, 1985), or a "trial judge's rejection of all or part of the testimony of a witness or witnesses," entitles a defendant to a new trial. *Sanchez, supra* at 1414. Rather, a trial judge must determine if one of the tests applies so that it would seriously undermine the credibility of a witness' testimony and, if so, is there "a real concern that an innocent person may have been convicted" or that "it would be a manifest injustice" to allow the guilty verdict to stand. *Id*. If the "evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions," the judge may not disturb the jury findings although his judgment might incline him the other way. *Kringstad, supra* at 307.[1] Any "real concern" that an innocent person has been convicted would arise "only if the credible trial evidence weighs more heavily in [the defendant's] favor than against it." *Polin, supra* at 551.[2] [*Lemmon*, 456 Mich at 642-645 (footnotes omitted).]

### a. FELONY MURDER

Jordan's principal argument with respect to his felony-murder convictions is that the police did not adequately eliminate Gilbert as a suspect in the shootings. Jordan argues that the evidence supported Gilbert's identity as the shooter because he was the first person to find the victims, he reported the crime, and he did not initially tell the police that he saw Davis leaving the scene shortly after the shooting. Gilbert testified at trial and explained how he investigated

---

[1] *State v Kringstad*, 353 NW2d 302 (ND, 1984).

[2] *United States v Polin*, 824 F Supp 542 (ED Pa, 1993).

Welch's apartment after hearing the gunshots, and he further explained why he did not initially identify Davis to the police. It was up to the jury to evaluate Gilbert's account, determine his credibility, and weigh his testimony against the evidence of Jordan's guilt, notably the video evidence showing Jordan and Davis entering the apartment building by climbing through a window, feigning a robbery in the hallway outside Welch's apartment, and then entering Welch's apartment, as well as Jordan's admission that he entered Welch's apartment and stole drugs, all of which occurred in the same general timeframe that the two victims were shot and killed inside Welch's apartment. Jordan has not shown that Gilbert's testimony lacked probative value, was inherently implausible, or defied physical realities such that it could not be believed. *Lemmon*, 456 Mich at 642. Further, considering the video evidence and Jordan's admissions, and the lack of any corroborative evidence of Gilbert's involvement in the offense, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Thus, Jordan has failed to show that his felony-murder convictions are against the great weight of the evidence.

## b. ARMED ROBBERY AND FELONY-FIREARM

We also reject Jordan's argument in his Standard 4 brief that his armed robbery and felony-firearm convictions are against the great weight of the evidence. Jordan again relies on the lack of direct evidence that he possessed a firearm or was involved in the victims' shooting deaths. As discussed earlier, however, the evidence supported an inference that the victims were shot during the course of a larceny committed by Jordan and Davis, and even permitted the jury to find that Jordan was the shooter. Jordan's convictions of armed robbery and felony-firearm are not against the great weight of the evidence.

## II. DOCKET NO. 343435 (DEFENDANT DAVIS)

## A. SUFFICIENCY OF THE EVIDENCE

Davis challenges the sufficiency of the evidence to support his conviction of first-degree home invasion. Davis argues that he could not be convicted of first-degree home invasion because he was with Jordan, who Davis asserts was living at Welch's apartment at the time of the offense and thus had a lawful right to be there.

The charge of first-degree home invasion was predicated on breaking and entering the apartment, not entering without permission. However, a person cannot be convicted of home invasion for breaking into a dwelling in which the person is lawfully present. *People v Bush*, 315 Mich App 237, 246; 890 NW2d 370 (2016). In this case, conflicting evidence was presented at trial regarding whether Jordan was actually living at the apartment at the time of the offense. The evidence showed that, at the time of the offense, Jordan did not have a key to Welch's apartment, or to the apartment building. Jordan and Davis gained access to the building by climbing through a window. Evidence was also presented that after entering the building, Jordan and Davis faked a robbery as they approached Welch's apartment. The jury could have inferred from this evidence that Jordan was not living at Welch's apartment at that time, and thus did not have a lawful right to be present there or to invite Davis inside.

-10-

Although Davis claimed that Newman opened a window so that they could enter the building, the evidence did not establish that Newman lived at Welch's apartment or had authority to invite Jordan or Davis inside. According to Gilbert, Newman was not a "regular" at the apartment and was very seldom there. Further, the jury was not required to believe Davis's claim that Newman was involved, particularly considering that she was shot and killed during the offense.

Davis also gave inconsistent statements regarding the entry into Welch's apartment. He said that the door was open, but he also said that they had to "push it a little bit." Although the front door itself was not damaged and there was no sign of forced entry, there was evidence that the door frame had some damage. During closing argument, the prosecutor urged the jury to look at the door hinge on the surveillance recording because it moved when defendants entered the apartment, indicating that the door was closed and they had to put pressure on it to enter the apartment.

Viewing the evidence and resolving all conflicts in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that defendants did not have a lawful right to enter the unit. Thus, sufficient evidence supports Davis's conviction of first-degree home invasion.

## B. SENTENCING

Davis argues that the trial court erred by scoring offense variable (OV) 3 of the sentencing guidelines at 100 points, and also by departing from the sentencing guidelines range of 45 to 75 months and imposing an unreasonable departure sentence of 10 to 20 years' imprisonment.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must determine "whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

The sentencing offense in this case was first-degree home invasion. The trial court assessed 100 points for OV 3 on the basis that "[a] victim was killed." MCL 777.33(1)(a). The instructions for OV 3 state that a court should "[s]core 100 points if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b).

Relying on *People v McGraw*, 484 Mich 120; 771 NW2d 655 (2009), Davis argues that a trial court is not permitted to score OV 3 on the basis of conduct or actions beyond the

sentencing offense unless the offender was under the influence of drugs or alcohol. In *McGraw*, 484 Mich at 122, the Court clarified that when scoring offense variables, only conduct that occurred during the sentencing offense may be considered, unless the Legislature has specifically provided that a court can consider the entire criminal transaction. It is apparent that the Legislature did not intend to limit the scoring of OV 3 to only conduct directly related to the sentencing offense where there has been a homicide, but homicide is not the sentencing offense. MCL 777.33(2)(b) is broadly worded to encompass any death that results from the commission of a crime. However, there must be a causal connection between the sentencing offense and the death. In *People v Laidler*, 491 Mich 339, 345; 817 NW2d 517 (2012), our Supreme Court explained that 100 points are to be assessed under MCL 777.33(2)(b) if the defendant's criminal actions constitute a factual cause of the victim's death. "In determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have occurred?" *Laidler*, 491 Mich at 345.

Although it is undisputed that two victims were killed, the sentencing offense was first-degree home invasion. Thus, the pertinent question is whether Davis's conduct in relation to the home invasion was a factual cause of the victims' deaths. Davis was separately charged with first-degree premeditated murder and first-degree felony murder for causing the victims' deaths, but the jury acquitted him of those charges. At the time Davis was sentenced, the fact that Davis had been acquitted of the murder charges did not preclude the trial court from finding that a preponderance of the evidence supported a finding that Davis's conduct during the home invasion was a factual cause of the victims' deaths, because trial courts were permitted to consider conduct for which an offender was acquitted. See *People v Jackson*, 320 Mich App 514, 526 n 5; 907 NW2d 865 (2017), rev'd in part on other grounds ___ Mich ___ (2019) (Docket No. 156502); *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994). Recently, however, our Supreme Court held in *People v Beck*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 152934); slip op at 2, that "[o]nce acquitted of a given crime, it violates due process to sentence the defendant as if he committed that very same crime." In *Beck*, the Court held that trial courts may continue to sentence a defendant on the basis of uncharged conduct using the preponderance-of-the-evidence standard, but reasoned that when a jury has found beyond a reasonable doubt that the defendant did not engage in certain charged conduct, the defendant is still entitled to the presumption of innocence, and considering that same conduct at sentencing is fundamentally inconsistent with the presumption of innocence. *Id*. at ___; slip op at 10.

In light of *Beck*, we conclude that the trial court erred by assessing 100 points for OV 3 when scoring the guidelines for first-degree home invasion. The jury absolved Davis of any liability for the deaths of Welch and Newman. The jury's verdict acquitting Davis of the murder charges indicates that it determined that Davis's conduct was not a factual cause of the victims' deaths. Therefore, under *Beck*, the trial court could not rely on that conduct as a basis for scoring OV 3. If OV 3 is not scored, Davis's guidelines range is reduced from 45 to 75 months to 24 to 40 months under the applicable class B sentencing grid. MCL 777.63. A scoring error that affects the appropriate guidelines range generally requires resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

Plaintiff argues that even if the trial court erred by scoring OV 3, remand for resentencing is not required because the trial court departed from the sentencing guidelines range, the

guidelines are merely advisory, and the trial court's departure indicates that it did not rely on the guidelines range but instead imposed what it considered to be an appropriate sentence for Davis's conduct. In *People v Ambrose*, 317 Mich App 556, 565; 895 NW2d 198 (2016), this Court held that a scoring error that affects the appropriate guidelines range does not require resentencing where the trial court departed from the guidelines range and this Court determines that the departure was reasonable. In this case, Davis raises a separate challenge to the reasonableness of his departure sentence. As indicated, a departure sentence is reasonable if it is proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Steanhouse*, 500 Mich at 459-460; see also *People v Dixon-Bey*, 321 Mich App 490, 520-521; 909 NW2d 458 (2017).

The trial court explained that it was exceeding the guidelines because Davis was a professional drug dealer who made a substantial amount of money selling drugs, he was involved in a gang, and he made a profit selling a substantial weapon on the street—factors that were not considered in the scoring of the guidelines. Although the court did not directly indicate that it considered conduct related to the deaths of Welch and Newman in its decision to depart from the guidelines range, their deaths were a factor in the scoring of OV 3, which significantly influenced Davis's guidelines range. Even though the trial court departed from the guidelines for other reasons, and even if the court's reasons justified a departure from the applicable guidelines range, it is unclear if the court would have imposed the same departure sentence knowing that Davis's guidelines range was 24 to 40 months instead of 45 to 75 months. Moreover, under *Beck*, the trial court's consideration of conduct of which Davis was acquitted in its scoring of OV 3 is an error of constitutional magnitude. Under these circumstances, we conclude that resentencing is required. Accordingly, we vacate Davis's sentence for first-degree home invasion and remand for resentencing on that offense.

## C. COURT COSTS

Davis also challenges the trial court's assessment of $1,300 in court costs. Because Davis did not object to the trial court's assessment of costs below, this issue is unpreserved, and our review is limited to plain error affecting Davis's substantial rights. *People v Konopka*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

The trial court was authorized to assess costs pursuant to MCL 769.1k(b)(*iii*). The trial court expressly found that the imposed costs were reasonably related to the actual costs incurred by the court. On appeal, Davis challenges the imposition of the court costs on various constitutional grounds. He acknowledges, however, that his arguments were previously considered in *People v Cameron*, 319 Mich App 215, 228-229, 231, 235; 900 NW2d 658 (2017), in which this Court held that costs imposed under MCL 769.1k(b)(*iii*) are a tax, not a fee, but that they are constitutionally permitted under the Distinct Statement Clause, Const 1963, art 4, § 32, and the Separation of Powers Clause, art 3, § 2. Although our Supreme Court granted oral argument to consider whether to grant an application for leave to appeal in *Cameron*, see *People v Cameron*, 501 Mich 986 (2018), the Court recently denied leave to appeal after hearing oral arguments. *People v Cameron*, ___ Mich ___ (2019) (Docket No. 155849). Accordingly, we are bound by this Court's decision in *Cameron*, MCR 7.215(J)(1), and accordingly, we reject Davis's constitutional challenges to the costs imposed by the trial court.

We affirm defendants' convictions, but vacate Davis's sentence for first-degree home invasion in Docket No. 343435 and remand for resentencing on that offense. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto